# Eliot *versus* Himrod et al.

1. The members of a general partnership already engaged in business cannot by recording a statement in due form under the limited partnership Act of June 2, 1874 (P. L. 271), showing that each partner has subscribed and paid in cash a sum certain, protect themselves under the provisions of said Act from individual liability for the debts of the association subsequently contracted, when, as a matter of fact, no cash has actually been subscribed or paid, but the assets of the firm as originally constituted have simply been allowed to remain in the business.

2. The validity of a partnership association limited may be attacked in a suit against its members.

3. Certain parties formed a general partnership in 1873, to which each

contributed a certain sum. They did business as the "K. B. & S. Co." Upon the passage of the limited partnership Act of June 2d, 1874 (P. L. 271), said parties filed a statement in due form, under the provisions of that Act, setting forth that each partner had subscribed and paid in cash a sum certain. The statement was false. No cash was actually subscribed or paid, but the assets of the old firm, without any formal transfer, were allowed to remain in the business. No certificate of this fact was afterwards recorded under the provisions of the Act of May 1st, 1876 (P. L. 89). The company then did business as the "K. B. & S. Co., Limited." Eventually it became insolvent. In a suit brought against the members as general partners for a debt incurred by the company after 1874:

*Held,* that said members were not protected from individual liability for the debts of the association, and that the plaintiff was entitled to judgment.

February 3d, 1885. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. GORDON, J., absent.

ERROR to the Court of Common Pleas of *Erie county :*
Of January Term, 1885, No. 49.

Assumpsit, by John Eliot, Treasurer of the German Savings Institution of Erie, Pa., against Wm. Himrod et al., who, with John W. Hammond, now deceased, were late partners, doing business under firm name of Keystone Boot and Shoe Company, Limited.

The narr. alleged liability of defendants as general partners, upon two notes, of which the following are copies :

| Keystone Boot & Shoe Comp'y, Limited, Manufacturers, East Twelfth St., Erie, Penn'a. | $2,500.00.　　　　　　Erie, Penn'a, Nov. 27, 1878. · Sixty days after date, the Keystone· Boot & Shoe Company, Limited, promises to pay to the order of John Eliot, Esq., Trea's, Twenty-five hundred dollars, at German Saving Institution of Erie, Pa., value received.　　　　　　WM. HIMROD, Treas. |
| --- | --- |
| Keystone Boot & Shoe Comp'y. Limited, Manufacturers, East Twelfth St., Erie, Penn'a. | $2,000.00.　　　　　Erie, Penn'a, Dec. 3, 1878. Sixty days after date the Keystone Boot & Shoe Company, Limited, promises to pay to the order of John Eliot, Esq., Trea's, Two Thousand dollars, at German Savings Institution of Erie, Pa., value received.　　　　　　WM. HIMROD, Treas. |

[Eliot v. Himrod.]

The parties by agreement filed waived trial by jury and submitted the cause to the Court under the Act of 2d April, 1874. The cause was tried January 3d, 1884, before BROWN, P. J., of the 37th Judicial District, whose findings of fact and conclusions of law were as follows:

In the spring or summer of 1873, the defendants, together with John W. Hammond, now deceased, subscribed to the stock of an organization for the manufacture and sale of boots and shoes, &c. It was intended that the organization should be incorporated under the manufacturing laws of the state. The capital was to be $40,000, and of this James Sill and Henry Butterfield each subscribed $2,500, and each of the other seven $5000.

The history of this organization, prior to the 29th of September, 1874, so far as the same may be material in this suit, is substantially—That no incorporation was procured; payments upon subscriptions were made to an amount exceeding $30,000, about $5,000 of which was paid in tools and machinery by Wm. Himrod. The amounts paid were all or nearly all expended in the erection of a building and the purchase of tools and machinery. About the month of February, 1874, this organization commenced business under the name of the Keystone Boot & Shoe Company, and from thence to the date next mentioned had transacted business to the extent of about $37,000.

On the 29th of September, 1874, the parties to the before mentioned organization, by statement, dated the 21st September, 1874, duly signed, acknowledged and recorded in the Recorder's Office of Erie County, on said 29th September, formed a partnership association under the provisions of the Act of June 2d, 1874, entitled, an Act authorizing the formation of partnership associations, in which the capital subscribed shall alone be responsible for the debts of the association except under certain circumstances.

The recorded statement designates the total amount of the capital as $50,000, of which sum $40,000 are asserted to have been paid in cash; the business designated, is the manufacture and sale of boots and shoes and all articles or commodities in any way connected with said business within the County of Erie, and State of Pennsylvania.

The name adopted was the Keystone Boot and Shoe Company Limited.

The statement signed and recorded, complied in form with the requirements of the law, but was incorrect in this: that it asserted that $40,000 of the capital had been paid in cash, when in fact no cash was paid, but the property and assets of the Keystone Boot & Shoe Company, although not formally

assigned or transferred, was treated by the parties as transferred to, and as cash paid in on the formation of the Keystone. Boot & Shoe Company Limited.

The Keystone Boot & Shoe Company Limited did business as an association from its formation in September, 1874, until January, 1879, and the fact that it did so was known to the plaintiff at the time of contracting the debts for which the notes in suit were given.

No subscription list book was kept by the association.

Before the 29th September, 1874, the journal and ledger were headed: Keystone Boot & Shoe Company, after that time, the same books were used until a new journal was needed, when the word "Limited" was added to the same.

The defendants in this suit are worth in the aggregate at least half a million of dollars.

The consideration of the two notes in suit was the sum of $4,500 obtained by the plaintiff.

### CONCLUSIONS OF LAW.

The Act of 2d June, 1874, provided for a cash capital: Maloney et al. *v.* Bruce, 13 Norris, 249; Keystone Boot & Shoe Company *v.* Schoellkopf's Sons, 11 W. N. C., 132. It is certain that the subscribers to the Keystone Boot & Shoe Company Limited had not paid their subscriptions in cash, and inasmuch as no statement with the description and valuation of property contributed, has been made and recorded, it is also certain that the case is not within the curative provisions of the Act of May 1st, 1876.

Such being the case, are defendants liable to the plaintiff, as general partners? The counsel for the plaintiff has cited a number of cases wherein the Supreme Court has held that a failure to comply strictly with the provisions of the Act of March 21st, 1836, limiting the liability of a special partner, will render the parties liable as general partners. I am of the opinion that the Act of 1836 differs in so many particulars, and that its general purpose is so essentially different from the Act of 1874, that the decisions under the former are not to be taken as conclusive of the rights and liability of the parties under the latter Act. By the Act of 1836 it is expressly provided that if any false statement is made in the certificate or affidavit, all the persons interested in the partnership shall be liable for all the engagements thereof, as general partners. On failure to publish the terms of the partnership it shall be deemed general. A renewal or continuance of partnership without a compliance with the requirements of its original formation, shall be deemed a general partnership. Every

alteration in the name of the parties or nature of the business, or in the capital or shares thereof, or in any other matter specified in the original certificate, shall be deemed a general partnership. If a special partner shall interfere with the business, he shall be deemed a general partner. A special partner assenting to or concurring in an assignment or a judgment, confessed in contemplation of insolvency, shall be liable as a general partner.

Aside from the instances where a liability as general partners is expressly prescribed, the Act of 1836 evinces a purpose to hold the parties liable as such in all cases where its essential provisions have not been strictly complied with. The Supreme Court have so interpreted the Act, of which Andrews & Schott, 10 Barr, 47, is an instance.

We must presume that the Act of 1836 and the decisions under it were well known to the law-makers at the time the Act of 1874 was passed. The omission to prescribe the penalty of liability as general partners for a failure to comply with the provisions of the last-named Act, is good reason for concluding that no such liability was intended. Alike in some particulars, the general purpose and intent of the two Acts are essentially different; the one provides for the formation of partnerships, consisting of one or more persons, liable as general partners, and one or more persons who shall not be liable for the debts beyond the fund contributed upon the terms, with the rights and powers, and subject to the conditions and liabilities prescribed by the Act. The other authorizes the formation of what is called partnership associations, in which, the capital subscribed, shall *alone* be liable for the debts of the association except under certain circumstances, and in no instance do the excepted circumstances impose a liability as general partners on the members of the association.

A partnership association, under the Act of 1874, and its supplements, has many of the features of a corporation; among others, succession of membership, annual elections of managers, a division of profits as dividends, a limited existence, a statutory mode of dissolution, a common seal, ability to acknowledge writings by its chairman and secretary, ability to hold and convey real estate in the name of the association, to sue and be sued by that name, and by process served on its chairman, secretary or treasurer. These features, together with the title of the Act, and the express statement in the first section, that the purpose is the formation of partnership associations in which the capital subscribed shall alone be liable for the debts of such association, convinces me that there can be no liability of the parties as general partners where, as in this case, the statement signed and recorded is in form, such as the law re-

quires as preliminary to the existence of the association. Doubtless a false assertion in the statement would render the subscribers liable in an appropriate form of action for damages occasioned thereby, but it is only the contract rights of the plaintiff and the contract liability of the defendants with which we have now to deal.

At the time of the creation of the debt in suit, the Keystone Boot & Shoe Company, Limited, assumed to be duly organized as a partnership association under the Act of 1874, and was, and for more than four years had been doing business as such association. The plaintiff in contracting the debt in suit, dealt with the association as the Keystone Boot & Shoe Company Limited, and hence as between the parties to this suit, the association must be regarded as having a de facto existence, and so regarding it I think the rule applicable to corporations, is in its reason and spirit applicable here, namely: One who deals with a corporation in its corporate capacity, cannot impeach its existence in a collateral proceeding by showing that the conditions precedent have not been complied with: Spahr & Farmers' Bank, 13 Norris, 429; Johnston *v.* Loan Association, 14 W. N. C., 247; 8 Out., 394.

I think the plaintiff and other creditors have all the contract rights to which they are entitled under the law as against the subscribers to the association, when such subscribers are compelled to pay in cash the amount that they wrongfully asserted in the recorded statement, had already been paid. The remark of Justice PAXSON in the case of Maloney *v.* Bruce, 13 Norris, 249, that "if parties seek to have all the advantages of a partnership, yet limit their liability as to creditors, they must comply strictly with the Act," is to be understood only as an accurate statement of the law of the case then before the Court, which was a proceeding under the Act of 1874 to enforce the payment of the unpaid subscriptions.

If the defendants have incurred any liability by reason of the failure of the association to keep a subscription list, or in the omission to use the word "Limited" as required by the Act, the liability thus incurred is not in my opinion that of general partners.

And now, April 14th, 1884, if no exceptions to the foregoing findings of fact or conclusions of law, shall be filed within thirty days after service of notice of the filing hereof, the prothonotary will enter judgment in favor of the defendants, with costs.

The plaintiff presented the following points, all of which were answered in the negative:—

1. That if the Court finds from the evidence in the cause that the statement filed by the subscribers to the "Keystone

[Eliot v. Himrod.]

Boot & Shoe Company Limited," in the Recorder's office of Erie county, was false, in that it asserted that said subscriptions had been paid in cash, and that in truth such subscriptions had not so been paid, then the said statement was not in compliance with the provisions of the Act of June 2d, 1874, and affords no protection to the defendants in this case, and that said defendants are general partners for all the debts of said Company.

2. That if the defendants in this case filed a statement in the Recorder's office of Erie county, in relation to the Keystone Boot & Shoe Company Limited, to which they were subscribers, that was false in relation to the payments made by them on their subscriptions to its capital stock, such false certificate was not in compliance with the provisions of the Act of June 2d, 1874, relating to limited partnership associations, and said defendants never became a limited partnership association, but continued to be general partners as they were before that time.

3. That if the subscribers to said association kept no subscription list book, as required by the Limited Partnership Act of 1874, they were, and are, liable to all creditors as general partners.

4. That if any of the books of said association did not contain the word *limited* after its title, the defendants are liable as general partners.

5. That under all the evidence in the case, the plaintiff is entitled to recover the amount demanded in this suit.

The defendants presented the following points:—

1. The plaintiff is not entitled to recover in this case on the paper offered in evidence, because the face of the paper shows that it was made by the Keystone Boot & Shoe Company Limited, and because the articles of association of said company, offered in evidence, show that at the time of the creation of the debt the company was doing business as an association limited, under the Act of June 2d, 1874, and its supplements.

2. The defendants in this case having organized under the Act of June 2d, 1874, and being engaged in business under said organization, they can only be charged with the indebtedness of said company in the mode and manner provided in said Act, and for debts contracted in accordance with said provisions.

3. The evidence showing in this case that the plaintiffs dealt with the defendants as an association limited, it cannot now set up that the credit was given defendants as general partners.

4. It is the policy of the law to treat associations formed

under the Act of June 2d, 1874, as organizations de facto, and for any omissions to comply strictly with its provisions to make the stockholders answerable to creditors on their stock subscriptions.

5. That creditors cannot complain if the whole amount of the capital stock is made available to them, and the administration of the law on this principle will render it operative and useful, otherwise it will be a dead letter.

6. On this principle the defendant has been treated · as a limited organization under said Act, and adjudicated upon the rights of its creditors in the case of The Keystone Boot & Shoe Company Limited, *v.* Schoellkopf, 11 W. N. C., 133.

Answers to defendants' points:—The defendants' 1st, 2d and 3d points are affirmed. The defendants' 4th, 5th and 6th points we do not regard as material, and decline to answer them except as they are already answered under the head of " Conclusions of Law," and by the answers to defendants' 1st, 2d and 3d points, and the negative answers to plaintiff's points.

Exceptions filed by the plaintiff to the decision were overruled by the court, and judgment was entered for defendants in accordance with the decision. The plaintiff took this writ of error, · assigning for error the answers to plaintiff's and defendants' points, the dismissal of plaintiff's exceptions, and the judgment. ·

*John C. Brady* and *Theo. A. Lamb*, for the plaintiff in error.— The defendants in this case are seeking exemption from liability to which they would be subject at common law. To succeed, they must not only produce the Act of Assembly under which they claim exemption, but they must show that they have complied strictly with its provisions. Such has been the ruling of this and other courts : Maloney *v.* Bruce, 13 Norris, 249; Andrews *v.* Schott, 10 Barr, 47 ; Vandike *v.* Rosskam 17 P. F. S., 330 ; Pierce *v.* Bryant, 5 Allen, 91 ; In re Disston File Co., 8 W. N. C., 58.

The Act authorizing such partnerships limited invests them with some of the incidents of a corporation, but does not make them corporations. The Act of June 7th, 1879, sec. 7 (P. L. 116) reads, " any corporation, company or limited part-. nership." The defendants filed a false certificate, which is equivalent to none, hence not a compliance with the law, hence they never became a limited association : Keystone Boot & Shoe Co. Limited *v.* Schoellkof & Sons, 11 W. N. C., 132; Haviland *v.* Chace, 39 Barb., 285. The result is they are general partners. Haviland *v.* Chace, *supra*: Andrews *v.* Schott, 10 Barr, 47; Pierce *v.* Bryant, 5 Allen, 91; Richard-

[Eliot v. Himrod.]

son v. Hogg, 2 Wright, 153; Vandike v. Rosskam, 17 P. F. S., 333.

There was no evidence showing that the plaintiff entered into any special agreement with the defendants to look to them as a limited association only; indeed there was no such allegation. In the absence of a special contract the presumption is that the contract was made in reference to the legal rights of the parties: Andrews v. Schott, 10 Barr, 55, 56.

It is equally clear that the plaintiff's acts do not estop him from showing the truth: Patterson v. Lytle, 11 Pa. St., 53; Eldred v. Hazlet, 33 Pa. St., 307; Bigelow on Estoppel, page 480. The ruling of the court, therefore, is clearly erroneous.

*John P. Vincent* and *George A. Allen*, for defendants in error. *S. A. Davenport, P. P.*—The fallacy of the argument of plaintiff in error consists in assuming that the same rules apply to "partnership associations," formed under the Act of June 2d, 1874, as apply to special partnership formed under the Act of March 21st, 1836, when said Acts are in no respect similar, and were not enacted for similar, but entirely diverse purposes. The Act of 1874 is not a supplement to the Act of 1836, but is an independent Act by its very title, created for the purpose of enabling citizens of the state to form partnership associations, in which, " the *capital subscribed* shall *alone* be responsible for the debts of the association, except under certain circumstances," and those exceptions are specifically stated in the Act, and are as follows:

1. "The omission of the word 'limited' in the use of the name of the partnership association, shall render each and every person participant in such omission, or knowingly acquiescing therein, liable for any indebtedness, damage or liability arising therefrom."

2. "No debt shall be contracted or liability incurred for said association, except by one or more of said managers, and no liabilities in an amount exceeding $500, except against the person incurring it, shall bind the said association, unless reduced to writing and signed by at least two managers."

The large wealth of these defendants at the time this partnership was organized negatives the idea of fraud; it was organized in view of the then pending legislation, and defendants made payments on subscription in contemplation of a limited association, if such a one was authorized. After the passage of the Act of June 2d, 1874, an association under that Act was formed, and the payments made by the defendants were by agreement treated as if paid on their actual subscription to the capital of that association. This association was organized before the Act of May 1st, 1876, was passed, which required

property to be inventoried and appraised when paid in on sub-
scription to capital, and inasmuch as the money had been
actually invested in the plant and materials required by the
association to carry on the intended business, the parties
thought they had a right to treat it as cash.

Unless the parties to this organization can be impeached of
a fraudulent intent in organizing this association, the organ-
ization must be recognized as legal, and subject only to the
liabilities imposed by the law under which it came into exist-
ence.

The rule is that organizations erected under the forms of
law and having an existence *de facto*, are during the term of
their actual existence, organizations *de jure;* Campbell *v.*
Commonwealth, 15 Norris, 344; Gartside Coal Co. *v.* Max-
well, 22 F. R., 197.

Mr. Justice TRUNKEY delivered the opinion of the court,
April 13th, 1885.

• This action is against the defendants as partners for recov-
ery of the amount of two notes given for money borrowed for
use of the firm. In 1873, the defendants, together with John
W. Hammond, late deceased, associated for the manufacture of
boots and shoes, each agreeing to put a stipulated sum into
the capital; and they contemplated procuring a charter of
incorporation. More than three fourths of the money so
agreed to be put in, was paid, nearly all of which was expen-
ded in the erection of a building and the purchase of tools
and machinery. The business was commenced in February
1874, and continued until January, 1879.

To defeat recovery, the defendants allege that they formed
a partnership association under the Act of June 2d, 1874, and
the statement was recorded on September 29th, 1874, at which
date the word " Limited " was added to the name of the firm.
This statement sets forth that forty thousand dollars of the
capital was paid in cash, and also the amount subscribed for
and paid by each partner. " In fact, no cash was paid, but
the property and assets of the Keystone Boot and Shoe Com-
pany, although not formally assigned or transferred, was
treated by the partners as transferred to, and as cash paid in,
on the formation of the Keystone Boot and Shoe Company
Limited." What said property and assets were worth does
not appear, but the fact is probably immaterial, for the ques-
tion is not one of good faith on the part of the members.

What change was actually effected by the attempt of the
partners to shield themselves by the statutory provision that
their capital which they had already put into the firm should
alone be liable for the debts of the association ? The word

"Limited" was added to the firm name. No cash was added to the capital. Nor was a subscription-list book kept—there was no subscription. The business went on as before, care being taken to exhibit the new name. At that time the statute did not provide that the partners might contribute to the capital in real or personal property, and no certificate was afterwards recorded to bring the association within the supplementary Act of May 1st, 1876. Then, the inquiry is whether the members of a partnership, already engaged in business, by recording a statement in due form, showing that each partner has subscribed for and paid in cash a certain sum, none of which was subscribed for or paid, are protected from individual liability for the debts of the association subsequently contracted.

The Act of 1874 has little resemblance to the Act of 1836, which authorized the formation of limited partnerships which may consist of one or more general partners, and one or more special partners. It is far less stringent in its terms, and has no provision for general and special partners. The recorded statement must show the full names of the partners, with the amount of capital subscribed for by each, and when and how to be paid. Thus, the public are informed of the strength of the association, and creditors of the amount of capital paid or to be paid by the members. An execution, in some circumstances, may be directed against members for satisfaction of a debt of the association. It is plain that the statute demands a true statement of the capital, and that prior to the Act of 1876 the capital was to be paid in cash; since, it may be contributed in real or personal property. "If parties seek to have all the advantages of a partnership, and yet limit their liabilities as to creditors, they must comply strictly with the Act": Maloney v. Bruce, 94 Pa. St., 249. In that case and in the case of Keystone Boot and Shoe Company Limited v. Schoellkopf's Sons, 11 W. N. C., 132, judgments were obtained against the respective associations, and the members had no protection against executions for the full amount of their respective subscriptions, if the same were necessary for satisfaction.

Upon the most liberal interpretation of the statute the defendants are liable as general partners. There was no substantial compliance with its chief requisite. They all participated in the making of the statement and the subsequent conduct of the business. True, they had not been long engaged in the business, and at its beginning intended to procure a charter for a corporation, but the fact remains that the business they had begun was continued. General partners, by recording a statement in due form, false with respect

to subscription and payment of capital, are not within the statute which, on certain terms, abrogates the common law rule that he who contracts to contribute capital and share in the profits of a firm, shall be liable for its debts. Each partner is liable, unless saved by statute. If the partners have not complied with the statutory requisites, a limited partnership association has not been formed. Where there is no record of a proper statement, there is no statutory association. Where the chief requisite in the recorded statement is false, the partners who misstated the fact have no shield against the rule at common law respecting their liability for debts. The recorded statement is not made conclusive evidence of the formation of a limited association. If such was the intendment it would be plainly expressed. Were it so, what could be a stronger sanction and encouragement of fraud? In that case, without publication or affidavit, upon a false representation placed on record, persons could embark in business with expectation of profit and without fear of loss. The statute prescribes no mode of correction where the apparently complete statement is untrue. No remedy can be more simple and conservative of the rights of all parties than a trial in due course of law. The creditor sues the members; they set up their recorded statement in defence; the plaintiff establishes, if he can, that the statement is untrue in an essential point; and then, if that fact be found, the defence falls.

The defendants contend the rule applicable to corporations should be applied in this case, namely, that in a suit brought upon an evidence of debt, either by or against a corporation *de facto*, the corporate existence and ability to contract cannot be questioned. When a charter of incorporation has been actually granted and certain persons are in possession and enjoyment of the rights thereby conferred, though the charter might be declared void by the court in a proper proceeding, its validity cannot be determined in a collateral suit: Spahr *v.* Farmers' Bank, 94 Pa. St., 429. The formation of a limited partnership association is materially different from the creation of a corporation. Such association is treated in the statute as a partnership which, upon the performance of certain acts, shall possess specified rights and immunities. In contemplation that the association may consist of many members, for convenience it is clothed with many of the features and powers of a corporation, such as the right to sue and be sued, grant and receive, in the association name. But no man can purchase the interest of a member and participate in the subsequent business, unless by a vote of a majority of the members in number and value of their interests. No charter is granted to the persons who record their statement. When

[Grayson's Appeal.]

they are sued for debt and claim immunity founded on such statement, it is competent for the plaintiff either to point to a fatal defect on its face, or to prove that an essential requisite, though formally stated, is falsely stated.

It is unnecessary to note the numerous assignments of error *seriatim.* They are only sustained so far as inconsistent with this opinion. Some of them present points that are not essential to the disposition of this case. Upon the facts found the plaintiff is entitled to recover the amount of the notes in suit,

Judgment reversed, and now, upon the facts found by the court below, judgment is entered for the plaintiff for six thousand one hundred and seventy-four $\frac{70}{100}$ dollars, ($6.174.70.)