## Haslet et al. v. Kent et al., Appellants.

*Limited partnership—Schedule of assets—Acts June 2, 1874, May 1, 1876.*

Under the acts of June 2, 1874, P. L. 271, and May 1, 1876, P. L. 89, the property contributed to a limited partnership association is intended as the equivalent of cash, and the plain object of the provision requiring a schedule is to enable creditors to ascertain precisely of what the property consisted, and to judge its value. Where property has not been contributed, scheduled and valued as the act of May 1, 1876, directs, there is no payment of the capital.

Property described as having been purchased by the partners from another limited company subject to the payment of the company's debts and liabilities, is not such a contribution of property as the act contemplates.

An item in a schedule of "bills receivable $2,206.17," is insufficient where no other information is given by which a creditor could ascertain whether the notes were worth anything or not.

Argued Feb. 8, 1894. Appeal, No. 187, July T., 1893, by Samuel C. Kent et al., trading as J. N. Remsen & Co., Ltd., from order of C. P. Chester Co., Jan. T., 1893, No. 76, making absolute rule for judgment for want of sufficient affidavit of defence in favor of Haslet, Flanagan & Co. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule for judgment for want of sufficient affidavit of defence in assumpsit on promissory note.

From plaintiff's statement and the record, it appeared that defendants were sued as general partners. They alleged that they constituted a limited partnership association. In their

affidavit of defence they set forth their certificate of association, and the schedule of property attached. The material portions of the certificate and schedule are quoted in the opinion of the Supreme Court.

Rule absolute, in an opinion by HEMPHILL, J.

*Error assigned* was above order.

*George B. Johnson*, for appellant, cited: Act of June 2, 1874, P. L. 271; May 1, 1876, P. L. 89; Globe Refining Co.'s Estate, 151 Pa. 561; Cock v. Bailey, 146 Pa. 328; Laflin & Rand Co. v. Steytler, 146 Pa. 443; Rehfuss v. Moore, 134 Pa. 462; Andrews v. Schott, 10 Pa. 54; Cox v. Watts, Twells & Co., 157 Pa. 93; Lauder v. Logan, 123 Pa. 34.

*J. Frank E. Hause, R. Jones Monaghan* with him, for appellee, cited: Acts of June 2, 1874, P. L. 271; March 21, 1836, P. L. 143; Andrews v. Schott, 10 Pa. 47; Rehfuss v. Moore, 134 Pa. 462; Vanhorn v. Corcoran, 127 Pa. 267; Maloney v. Bruce, 94 Pa. 249; Eliot v. Himrod, 108 Pa. 569; Sheble v. Strong, 128 Pa. 316; Gearing v. Carroll, 151 Pa. 79.

OPINION BY MR. CHIEF JUSTICE STERRETT, Feb. 26, 1894:

The defendants, sued as general partners, denied their liability as such and claimed to be a limited partnership association properly organized under the act of June 2, 1874, P. L. 271, and its supplement of May 1, 1876, P. L. 89. They thus assumed the burden of setting forth in their affidavit of defence such compliance with the provisions of the act as entitled them to the benefit of exemption from liability as general partners. Instead of doing so, however, we think their affidavit discloses noncompliance with the requirements of the act and its supplement in two important particulars: (1) That at least part of the property alleged to have been contributed as capital is not such property as is contemplated by the supplement of 1876; and (2) that they have not properly scheduled all the property which is alleged to have been subscribed or contributed to the capital of the association.

In Exhibit D, which is attached to and made part of the affidavit of defence, it appears that "the total amount of cap-

ital subscribed is $3,900, all of which was fully paid in cash or personal property into the R. B. Chambers Company, Limited, as described in said articles of association, and is now represented by the personal property hereinafter scheduled; and the respective rights, interests and shares of the aforesaid members to and in the said association, and the capital and profits to be derived therefrom, are as follows: Samuel Kent, 16 shares;" to which is added the names of the remaining six subscribers and the number of shares subscribed by each respectively. As stated in the certificate, the amount of capital subscribed for by each is as follows: "The said subscribers having purchased the personal property of the R. B. Chambers Company, Limited . . . . and assumed the payment of all the liabilities of the said R. B. Chambers Company, Limited, have contributed the said property, fully described in the schedule hereto annexed, to this company, subject to the payment of the liabilities of the R. B. Chambers Company, Limited."

The schedule referred to is headed thus: "Schedule of personal property contributed by Samuel C. Kent, Thomas Gawthrop, John N. Remsen, Samuel K. Chambers, John J. Chambers, George R. Chambers and Mary R. Jackson, having been purchased by them of the R. B. Chambers Co., Limited, subject to the payment of its debts and liabilities, and in the same manner with all the bills receivable and book accounts, late of said company, contributed to J. N. Remsen & Co., Limited, as part of the capital of said association, as follows:"

Then follows an itemized inventory and appraisement of numerous articles of personal property aggregating $3,874.90. To this is appended the following:

"Summary Statement.

| | |
|---|---:|
| Capital invested . . . . . . | $3,900.00 |
| Notes and accounts payable . . . . | 2,468.92 |
| Profit in stock . . . . . . | 21.01 |
| | $6,389.93 |

| | | |
|---|---:|---:|
| Stock per inventory . . | $3,874.90 | |
| Bills receivable . . . . | 2,206.17 | |
| Cash in bank . . . . | 308.86 | $6,389.93 " |

It is manifest from their own showing that much of the so-called property subscribed and contributed by the defendants

to the capital of the association in question, is not such property as is contemplated by the supplement of 1876. The personal property purchased from the R. B. Chambers Company, subject to the debts and liabilities of that company, means what may be left, if anything, of the assets of the said company after all its debts and liabilities are paid. Such property as that is of no avail in aiding the business or paying the creditors of the J. N. Remsen & Co. Limited. At best, it is not presently available, and may never be. In Vanhorn v. Corcoran, 127 Pa. 255, one of the scheduled items was: "Isaac N. Kline et al., doing business as A. H. Heilman & Co., paid in merchandise, lumber, book accounts and bills receivable, transferred to this association, $21,609.18, and in cash $3,390.82, making a total subscription of $25,000." Referring to this item, Mr. Chief Justice PAXSON said: "A creditor looking at this description could not form any estimate of its quantity, character or value. For all practical purposes it might as well have been omitted." The defendants "merely contributed their interest in a firm with estimated assets of $75,000 and certain debts of $53,000. The value of the difference between the two was the alleged contribution of $21,609.18. . . . The whole of it in equity was liable to creditors and could not be withdrawn from them without fraud until the last dollar of the debts of the firm was paid. So that instead of property, the defendants contributed a mere equity, to wit, what was left of the assets of the firm after the payment of its debts. . . . Had the certificates set forth that their contribution consisted of their interest in a firm subject to the payment of its debts, it would have conformed to the truth, but it would not have been a compliance with the act of 1876. That act contemplates such contributions as shall be available to aid the business and pay the creditors of the limited partnership. Of what use was this contribution? It could not properly be made available until the debts were paid."

Substantially the same principle is recognized in Maloney v. Bruce, 94 Pa. 249; Rehfuss v. Moore, 134 Pa. 462; Cock v. Bailey, 146 Pa. 328; Laflin & Rand Co. v. Steytler, 146 Pa. 443; Gearing v. Carroll, 151 Pa. 79. In the latter the description of property contributed contained estimated valuations of certain contracts which were "subject to further expenses."

It is scarcely necessary to notice the lumping item "bills receivable $2,206.17," etc. Any creditor seeking information as to the character and value of the company's assets might safely assume that the item "notes and accounts payable" meant not less than $2,468.92, liabilities, the amount at which it is scheduled; but what could he know as to the value of the item "bills receivable?" Not the name of a single debtor is given, or anything stated that would be of any service in endeavoring to ascertain whether the "bills receivable" were worth anything or not. But further comment is unnecessary. Unless we are willing to let the act of 1876 become a cover for fraud, and a snare for the unwary, we should adhere emphatically to what we have heretofore said as to the scope and meaning of the act. As was said in Maloney v. Bruce, supra, the property contributed was intended as the equivalent of cash, and the plain object of the provision requiring a schedule was to enable creditors to ascertain precisely of what the property consisted, and to judge of its value. If parties seek to have all the advantage of a partnership, and yet limit their liability as to creditors, they must comply strictly with the requirements of the act. Where property has not been contributed, scheduled and valued as it directs, there is no payment of the capital.

The learned judge of the common pleas was entirely correct in the view he took of the case.

Judgment affirmed.