Thomas Lee and Harold Bacchus, trading as Lee &
Bacchus, *v.* William Burnley, John E. Burnley and
John S. Butterworth, Appellants.

*Partnership—Limited partnership association—Defective certificate.*

Where a limited partnership association expires by its own limitation,
owing a large sum of money, for the payment of which no provision is
made at the time, and three weeks thereafter another limited partnership
association is organized by the identical persons who were members of
the old one, and in their certificate these persons enumerate the property
of the old association and state that it is their own, and that they contribute
it as capital, and subsequently the new association pays some of the debts
of the old association, and then becomes insolvent, the members of the
new association are liable as general partners for the debts contracted by
the association.

Each partner of a limited partnership association is liable unless saved by
statute. If the partners have not complied with the statutory requisites,
a limited partnership has not been formed.

Argued Feb. 5, 1900.   Appeal, No. 148, Jan. T., 1899, by de-
fendants, from judgment of C. P. Delaware Co., Dec. T., 1897,
No. 469, on verdict for plaintiffs.   Before GREEN, C. J., Mc-
COLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit for debts contracted by a limited partnership asso-
ciation.   Before CLAYTON, P. J.

From the record it appeared that plaintiffs alleged that de-
fendants were liable as general partners for the debts which had
been contracted by the Parkmount Mills Company, Limited.
The claim was based on an alleged defective certificate filed on
July 22, 1897.   The schedule annexed to the certificate was as
follows:

"Schedule of the property contributed by the partners to the
Parkmount Mills Company, Limited, in accordance with the
foregoing certificate, at valuations approved by all the members
thereof:

|  |  |  |
|---|---:|---|
| 2 Horizontal boilers (60 horse power each) | $1,650 | 00 |
| 1 Upright boiler | 800 | 00 |
| 1 Corliss Engine (100 horse power) | 3,000 | 00 |
| 6 sets 60″ carding machines | 10,000 | 00 |
| Amount carried forward | $15,450 | 00 |

| | | |
|---|---:|---:|
| Amount brought forward | $15,450 | 00 |
| 4 self operating mules 612 spindles each | 5,000 | 00 |
| 100 witch looms Woods make $95, each | 9,500 | 00 |
| 3 warping mills | 300 | 00 |
| 3 bobbin winders | 350 | 00 |
| 6 spooling frames | 450 | 00 |
| 5 twisting machines at $575 | 2,875 | 00 |
| 2 shearing machines | 750 | 00 |
| 1 cloth dyer | 1,000 | 00 |
| 2 fulling mills at $125 each | 250 | 00 |
| 2 cloth washers at $125 | 250 | 00 |
| 1 Gessner steam press | 1,000 | 00 |
| 1 wool picker | 90 | 00 |
| 1 willow | 70 | 00 |
| Shafting, pulleys and hangers, | 2,000 | 00 |
| 4 dye kettles at $40 each | 160 | 00 |
| Fire apparatus, viz : Worthington pump and automatic sprinklers | 1,500 | 00 |
| Steam heating apparatus | 500 | 00 |
| Manufactured goods at mill: | | |
| 247 pieces worsted at $20 | 4,940 | 00 |
| 153 pieces woolens at $9 | 1,377 | 00 |
| Raw stock and yarns : | | |
| 10,327 lbs. dyed wool worth .32 per lb. | | |
| 10,628 lbs. cotton worth .08 per lb. | | |
| 15,241 lbs. worsted yarn worth .60 per lb. | | |
| Said raw stock and yarns being estimated for the purpose of this valuation at | 12,188 | 00 |
| | $60,000 | 00 |

" James Mallison.            John S. Butterworth.

" William Burnley.        Francis J. Butterworth.

" John E. Burnley.        Mary B. Walker.

" Recorded in the office for recording of deeds in and for Delaware county, Pennsylvania, in Limited Partner Book No.    page 336, etc.

" Thos. D. Young,

[Seal]                                    " Recorder of Deeds."

There was nothing in the certificate or schedule which showed that the property contributed was liable for the debts of a prior

limited partnership association which had expired by limitation.

Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[Now, let me repeat to you, the members of the firm, the members of the firm that immediately preceded the present partnership, had no individual property in the assets of that firm until its debts were paid or amply secured. When the debts are all paid what is left they may divide among themselves, and then, and not until then, does it become their property; until, therefore, there was a settlement of the affairs of the firm that immediately preceded the present association, there was no individual property in these gentlemen unless the affairs of that firm were settled.] [15]

[I say to you, gentlemen, as a matter of law, if you find that these gentlemen (the defendants) instead of having the affairs of the old firm settled and its debts ascertained or paid or secured, if instead of doing that you find they simply put the assets of the old firm into the new one unsettled, with its debts unpaid, your verdict should be for the plaintiff. The law will not recognize it. Why? Because the property is subject to the debts of the firm. It is not such property as the law recognizes can be put into a special partnership and set apart for special security for the debts of the new firm.] [16]

Verdict and judgment for plaintiff for $1,052.71. Defendants appealed.

*Errors assigned* among others were (15, 16) above instructions, quoting them.

*O. B. Dickinson*, with him *Edward A. Price*, for appellants.— Partnership creditors have no lien upon its property, but the same is in the full dominion and at the disposal of the firm, and they may segregate the property, pass it over to an individual partner or to a new firm whose property it then becomes. The creditors of the old partnership must work out their equities through the members of the old firm. If they are injured they have their proper remedy, but they have no lien and cannot follow specific property of the old firm to its new owner-

ship: Coover's App., 29 Pa. 14; York County Bank's App., 32 Pa. 446; Cope's App., 39 Pa. 284; Backus & Co. v. Murphy, 39 Pa. 401; Vandike's App., 57 Pa. 9; Baker's App., 21 Pa. 76; Cock v. Bailey, 146 Pa. 328; Electric Co. v. Weber, 172 Pa. 635; Laflin v. Steytler, 146 Pa. 434.

The agreement of the new association to take the remaining assets of the old partnership at a price equal to the amount of its debts, was lawful: Seigel v. Chidsey, 28 Pa. 279; Walker v. Bank, 98 Pa. 574; James v. Vanzandt, 163 Pa. 171.

*V. Gilpin Robinson,* for appellees.—Where property has not been contributed, scheduled and valued as the act of 1876 directs, there is no payment of the capital: Eliot v. Himrod, 108 Pa. 569; Vanhorn v. Corcoran, 127 Pa. 255; Gearing v. Carroll, 151 Pa. 79; Haslet v. Kent, 160 Pa. 85; Coover's App., 29 Pa. 9.

The law seems to be well settled that a general partnership having unpaid debts, cannot turn its assets into a limited partnership association subject to the payment of those debts, because the capital subscribed must be in cash or its equivalent: Haslet v. Kent, 160 Pa. 85; Eliot v. Himrod, 108 Pa. 569; Bank v. Creveling, Miles & Co., 177 Pa. 270.

OPINION BY MR. JUSTICE DEAN, March 5, 1900:

The plaintiffs brought assumpsit against William Burnley, John E. Burnley, James Mallison, John S. Butterworth, Francis J. Butterworth and Mary B. Walker, as general partners trading as " The Parkmount Mills Company, Limited." Francis J. Butterworth and Mary B. Walker not having been served, the jury was not sworn as to them. The plaintiffs dealt in wool; defendants carried on, professedly, a limited partnership in the manufacture of woolen goods. There was no dispute as to the amount of plaintiffs' claim, as evidenced by two notes of the partnership. The defense was that they were not general partners and that the limited partnership was alone liable, and as a consequence, only the partnership assets were subject to seizure or appropriation in payment of plaintiffs' debt. The reply was that in the formation of the limited partnership, the members had not conformed to and had violated the law authorizing and regulating such partnerships and that, therefore, they

were answerable to creditors as general partners. The court
below submitted to the jury some disputed questions of fact;
the verdict was for plaintiffs, and we now have this appeal by
only two of defendants. Twenty-six errors are assigned; thir-
teen to rulings on offers of evidence, and a like number to the
charge of the court. If there had been, properly, questions of
disputed fact, the answering of which determined defendants'
liability, we think, some, at least, of these assignments would
have merit; but, in our opinion, there was nothing for the con-
sideration of the jury because, in law, on certain undisputed
facts, defendants were answerable as general partners.

Take these facts as shown in great part by the record evi-
dence: The articles of association filed of record are dated
July 22, 1897; the subscribers are those here sued; the capi-
tal stock is set forth as $60,000, all paid in as follows: The
machinery, fixtures and stock valued at said sum, now in
Parkmount mills, near Lenni, in the township of Middletown,
Delaware county, contributed by the partners in proportion to
the amounts subscribed by each; the term of the partnership
was one year; then follow the usual stipulations for the gov-
ernment of the partnership, and then comes a schedule of the
machinery, fixtures and stock of the Parkmount Mills Com-
pany contributed as capital stock, with an itemized valuation
aggregating the exact amount of the capital. The part-
nership was composed of exactly the same persons as were
members of a former limited partnership, under the same name
and same act of assembly, that of 1874, which had been organ-
ized June 30, 1896, to continue for one year, and whose term
had expired June 30, 1897; not until July 22 following was
this partnership formed; it was not a continuation of or exten-
sion of the term of the old one, but was a new organization.
The financial condition of the old association, when its life
ended by the express stipulations of its articles, was as follows:

| | |
|---|---|
| Total assets, | $102,896.70 |
| Total liabilities, | 63,073.99 |
| Leaving net assets, | $39,822.71 |

Now, the members of the new partnership, who are the identical
members of the old one, took their entire capital, $60,000, from
the gross assets of the old one, leaving but $42,896.70 of old

assets wherewith to pay $63,073.99 of old debts. Yet these $60,000 of assets did not, under the law of their organization belong to the members of the new partnership to be used as capital in that organization. The old partnership expired by the ending of its term; its assets then became immediately subject to the just claims of its creditors; until the $63,073.99 of its debts were paid, or arrangements satisfactory to all the creditors were made for the disposition of them, it was, at least constructively, under the act, a fraud upon them to remove and divide among the partners $60,000 of the assets. And it is so held in Haslet v. Kent, 160 Pa. 85. This property thus taken, was still equitably subject to the claims of the old creditors; whether they had a remedy by which such claims could be enforced as against creditors of the new partnership, we need not inquire; one thing is clear, they had a remedy against the partners individually, for these partners disposed of to another concern, the very property which by the old certificate belonged to the old partnership creditors. These defendants contributed it as the capital of a new organization, without a word in the certificate to disclose its history, or the doubtful nature of their right to thus contribute it. Conscious of their moral obligation, if not a legal one, to the creditors of the old partnership, they undertook to discharge the old partnership liabilities out of the current income of the new one, and actually did pay $28,485.06, besides confessed judgments to old partnership creditors for about $17,000 more. As a consequence, after an existence of about eight months, the new partnership was insolvent. Did the new certificate set forth the fact as required by the act? It, in effect, avers that the machinery, stock and fixtures was their property absolutely, and that they turned it in as capital; but their title was not absolute, unless the property was surplus after payment of debts of the old partnership, or unless the old partnership creditors consented to the transfer; they took not a single step towards adjusting and closing up the business of the old partnership as the law points out; they simply divided the assets among themselves; and each appropriated to himself a large amount of what is set forth in the old certificate as capital of the old partnership; the new partnership undertook to make the creditors of the old one whole by paying its debts. In reality, the entire capital of the new part-

nership consisted of the debts of the old one, of which not even a hint is given in the certificate for information of the new creditors. All our authorities have held the members of a limited partnership to a strict compliance with the letter and spirit of the act. In Haslet v. Kent, supra, in the certificate, the property was described as having been purchased by the partners from another company, subject to the payment of that company's debts. It was held that this was not a contribution of a property within the meaning of the act; we said, speaking by the late STERRETT, C. J.: "Unless we are willing to let the act of 1876 become a cover for fraud, and a snare for the unwary, we should adhere emphatically to what we have heretofore said, as to the scope and meaning of the act. As was said in Maloney v. Bruce, 94 Pa. 249, the property contributed was the equivalent of cash, and the plain object of the provision, requiring a schedule, was to enable creditors to ascertain precisely of what the property consisted and to judge of its value." In the case before us, creditors had not, as in the case cited, even information, that the entire assets of the new partnership started with a debt equal to their value: Eliot v. Himrod, 108 Pa. 569; Hill v. Stetler, 127 Pa. 145.

The able argument of the learned counsel for appellant proceeds upon a mistaken premise. He assumes, for the purpose of his argument, that the arrangement for paying the debts of the old firm might support a claim against the new one, but could not make the members of the new one liable as general partners, if they acted in good faith, and in the exercise of an honest business judgment as to what was best for the interests of all concerned. His conclusion correctly follows from his assumption. But the case does not turn on good faith or honest business judgment; we cannot read into the act any such liberal features. As is said in Eliot v. Himrod, supra, "Each partner is liable unless saved by statute. If the partners have not complied with the statutory requisites, a limited partnership has not been formed." Nothing is said in the statute about compliance in good faith or in good business judgment, but it is distinctly enjoined that the property shall be contributed according to its value. This was not done here, and therefore the judgment is affirmed.