"[1. For several years prior to May 23, 1892, the firm of DeGontard Reynolds were engaged in the general jewelry business at Scranton, Lackawanna county, Pa. The partnership was composed of Walter DeGontard, who had his residence at Scranton, and was the managing partner, and Dr. Samuel Reynolds, who lived at Reynoldsville, Jefferson county, Pa., about 300 miles, or a day's travel, distant from Scranton.] [1]
"[2. About six months prior to the said 23d day of May, 1892, the said firm became financially embarrassed, and was compelled to secure an extension of time from its creditors, upon an agreement to make certain monthly payments. In May, 1892, these payments had not been kept up, and the firm was at least two months in arrear. The liabilities were about six or seven thousand dollars, and the stock and fixtures were worth somewhere from seven to nine thousand dollars, but the firm had no ready money, and was not able to meet its obligations as they came due. In order to make the payments which had so far been made on the extension obtained from creditors, it had been compelled to raise money by the pledge of some of the stock and fixtures of the store, and at least one of the creditors had begun to press the firm by suit. Mr. DeGontard had also given three notes, with confessions of judgment in the name of the firm, one to Samuel Hines, one of the defendants in this issue, for $1,000, dated March 4, 1891, payable one day after date; another to James Stone, another of the defendants, also for $1,000, dated April 1, 1890, and payable in one year from its date, and the third to T. B. Byner, another of the defendants, for $249.54, dated February 5, 1892, payable in four monthly installments. These notes were outstanding, and in large part unpaid at this time.] [2]
"[3. In view of the condition of things recited in the last paragraph, Mr. DeGontard, the managing partner, went to New York city on May 23, 1892, to consult with some of the largest creditors of the firm, who had assisted in securing the previous extension, and see what could be done. This step was taken without notifying his partner, Dr. Reynolds, or advising with him as to the situation of the business. As the result of this *Page 468 
consultation, and under the advice of Mr. Hodenpuhl and Mr. Openheimer, representatives of two of the principal creditors, Mr. DeGontard was prevailed upon to then and there execute a deed of trust in the name of the firm to Mr. A. J. G. Hodenpuhl, of New York, and Mr. A. B. Williams, of Scranton, for the benefit of creditors. This deed was a complete assignment of all the stock, fixtures, outstanding accounts and property belonging to the business of the firm, and provided that out of the proceeds of the sale of said property the following creditors should be preferred and paid in full, viz.: The Traders' National Bank of Scranton, of which Mr. Williams, one of the assignees, was cashier, $1,500; Hodenpuhl Sons, $744.52, H. E. Openheimer Co., two bills, one of $879.20, and one of $364.20; and other smaller creditors to the amount of about $1,700. After these preferences were paid the surplus, if any, was to be paid pro rata to certain other creditors named in the deed. Immediately after the execution of this assignment it was sent by mail to Scranton for record, and the next morning, May 24th, Mr. Hodenpuhl sent his clerk to the same place to take an account for him, as assignee, of the stock of the firm.] [3]
"4. The deed of assignment was filed for record in the office for recording deeds, etc., at Scranton, Lackawanna county, Pa., on May 24, 1892, at a quarter before two o'clock, P. M. The same day an execution for $1,000 was issued out of the common pleas of said county, to No. 518, June term, 1892, on a judgment entered in favor of Samuel Hines v. DeGontard Reynolds, which execution was received by the sheriff the same day at five minutes past three o'clock, P. M. Another execution for $500 was also issued the same day against the same defendants on judgment in favor of James Stone, No. 522, June term, 1892, and received by the sheriff at a quarter past five o'clock the same afternoon. These judgments were entered on the confessions of judgment referred to above in the second paragraph. Similar executions were issued the next day in favor of Martha E. DeGontard, Everett Warren, trustee, H. E. Openheimer, trustee, and H. L. Jacobs, trustee, on confessions of judgment given by Mr. DeGontard, in the name of the firm, May 25, 1892, and made payable on demand, and by T. B. Byner for a small balance due on the confession of judgment mentioned above. Under the several executions the *Page 469 
sheriff seized upon the personal property of the defendant's firm, found in the store at Scranton, and advertised the same for sale, and these goods being claimed by Hodenpuhl and Williams, as assignees under the deed of assignment, the sheriff applied for and obtained a rule for an interpleader, and an issue was directed. This is the issue now being tried, the assignees being the plaintiffs therein, and the execution creditors defendants. Subsequently the sheriff was allowed to go on and make sale of the property under an arrangement between the assignees and the execution creditors that this should be done, and the right to the proceeds be determined by the result of the issue." [5. The deed of assignment referred to above was executed and delivered by Mr. DeGontard, in the firm name, without the knowledge or assent of Dr. Reynolds, his partner, but a telegram was sent from New York by Mr. Openheimer the same evening to the latter, and also a letter, notifying him that an assignment had been made. The telegram does not appear to have been received. After Mr. DeGontard got back to Scranton from New York he telegraphed to Dr. Reynolds to come on, stating that the store was in the hands of the sheriff. He said nothing, however, about the assignment having been made, not understanding himself that such was the case, his idea of the trust deed being that it was merely an arrangement for still further carrying on the business. The first intimation Dr. Reynolds had that the property of the firm had been transferred to trustees for the benefit of creditors was by the letter of Mr. Openheimer, which was received by mail May 26, 1892. Prior to that, on the 25th, he received the telegram from Mr. DeGontard stating that the store was in the sheriff's possession. In a letter written to Mr. Openheimer, May 26th, he expresses his inability to reconcile these statements, and his ignorance with regard to the actual condition of affairs; he declares that he is anxious to have all creditors paid in full; that he had hoped that an arrangement for an assignment could be made; that a sale by the sheriff will be a sacrifice; that there ought to be enough property to pay all creditors, and with judicious management leave a balance over, and that he was willing to sign anything to this end. May 30th he followed this with a telegram from Reynoldsville to Mr. Openheimer at New York, saying: `Get an assignment; it is the only way to get anything;' *Page 470 
and the same day he wrote to him to the same effect, and repeated that he was willing to sign any papers that would aid in this purpose. June 23d he wrote again, inquiring why they did not prevent the sheriff from selling; that an assignment with proper management would have paid all claims, but that a sheriff's sale would only realize enough to pay the judgments. Other than this Dr. Reynolds does not appear to have ever expressed any assent to or dissent from the assignment made by Mr. DeGontard. In the meantime, on June 20th, the sheriff, under the arrangement above referred to, went on and made sale of the effects of the firm.] [4]
"The following are the conclusions of law applicable to these facts:
"1. The deed of assignment executed by Mr. DeGontard, so far as it was effectual, was by the statute law of the state (Act April 17, 1843, § 1, P. L. 273), a general assignment for the benefit of creditors, notwithstanding the attempted preferences therein.
"2. The said assignment, if valid, took effect from the time of its delivery, subject only to its being recorded within thirty days from its date in the recorder's office of Lackawanna county (Act March 23, 1818, § 5, 7 Sm. L. 132), which was duly done.
"[3. The delivery of the said assignment was effective, though made to but one of the assignees.] [7]
"[4. As a general rule one member of a general partnership cannot make an assignment for the benefit of creditors without the authority or consent of the other members of the firm; but if such an assignment be made by one partner it will be good as against subsequent execution creditors of the firm, unless the other partner or partners dissent therefrom.] [8]
"[5. Dr. Reynolds had sufficient notice that an assignment for the benefit of creditors had been made to call upon him to express himself with regard thereto, and he having failed to dissent therefrom, the assignment holds good as against the defendants, who are merely subsequent execution creditors.] [9]
"[6. The question in this issue is one of title, and the assignment by Mr. DeGontard to the plaintiffs was sufficient to transfer the title of the firm to the property in dispute, unless Dr. Reynolds, the other partner, positively dissented therefrom, which he is not shown to have done.] [10] *Page 471 
"[7. The authority of one partner to confess a judgment against the firm stands on no higher plane than his authority to assign the firm property for the benefit of creditors, and as the defendants in this issue are execution creditors on judgments confessed against the firm by Mr. DeGontard, one of the partners, while the plaintiffs claim title to the property in dispute by virtue of a prior assignment executed for the firm by the same partner, the defendants are not in a position to call said assignment in question.] [11]
"[8. On the facts found the plaintiffs are entitled to judgment.] [12]
"[Judgment is thereupon directed to be entered in favor of the plaintiffs, unless exceptions be filed within thirty days.]" [13]
Exceptions to the opinion were overruled.
Errors assigned were among others (1-4, 7-13) findings of fact and law in brackets, quoting them.