## In the Matter of the Assignment of the Mill Work & Mantel Company, Limited. Appeals of Gebhart et al.

*Assignment for creditors—Partners.*

An assignment for benefit of creditors executed by one or more partners is sufficient to pass the property of the general partnership to the assignee unless the other partners positively dissented therefrom: Hodenpuhl v. Hines, 160 Pa. 466, followed.

*Limited partnership—Essential requisites—General liability.*

The members of a limited partnership association will be held to be general partners when the statement filed was materially untrue and a subscription book had never been kept as required by the Act of June 2, 1874, P. L. 271.

*Limited partnership—Immunity from liability—When and how to be challenged.*

A limited partnership association is treated in the statute as a partnership which, upon the performance of certain acts, shall possess specified

rights and immunities; and where persons enter into a business venture and seek immunity from liability by association as such copartnership limited and fail to comply with its terms, by virtue of such noncompliance, they remain general partners.

In the distribution of a fund arising from an assignment for creditors made by what purported to be a limited partnership the creditors have the same right to show want of compliance with the statute as though they were proceeding by action against the members as general partners.

*Assignment for creditors—Distribution—Binding effect of judgment—Evidence.*

If the members of a proposed limited partnership do not comply strictly with the law an attempt to form a limited partnership is a failure and confers upon them no rights of immunities under the statute.

While it is true that judgments regular on their face cannot be questioned before an auditor by the creditors it is competent for creditors to adduce evidence showing that the fund for distribution is of such a character that it may not be applied to a particular judgment.

*Assignment for creditors—Partnership assignments.*

An assignment, regularly made in form as by a partnership limited which, in point of law, is found to be a general partnership, by reason of noncompliance with essential conditions of the act, does not impose on that fund liability for judgments which though valid as against a limited partnership would not bind a general partnership or the fund as assigned by such partnership, the judgments being in favor of persons who are members of such general partnership.

Argued Feb. 16, 1897. Appeal No. 14, Feb. T., 1897, of George A. Gebhart, with the several and separate appeals of Charles M. Renaut, Joseph H. Evans, Theodore Kramer, Jacob C. Bay, Charles R. Hoffman, and Samuel H. Follmer, from judgment and decree of C. P. Lycoming Co., Dec. T., 1894, No. 23, dismissing exceptions to and confirming the report of J. L. Meredith, Esq., auditor, distributing the funds in the hands of an assignee. Before WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Exceptions to auditor's report. Before METZGER, P. J.

The controversy in this case arises out of the claim made by Joseph H. Evans and other plaintiffs, who had recovered judgments against the Mill Work & Mantel Co., Ltd., for wages for labor performed in part during the period of six months immediately preceding the assignment, and who claimed to be entitled to a preference in the fund for distribution to the extent of $200 in each case, and to have their judgments share in the balance of the fund with the other creditors.

The auditor, J. L. Meredith, Esq., finds and reports in regard to the facts in this case as follows :

Jesse D. Snyder, Joseph H. Evans, Charles R. Hoffman, Jacob C. Bay, George A. Gebhart, Ferdinand Gramlich, Charles M. Renaut, and Elmer E. Brewer, desiring to form a partnership association, under the Act of Assembly of June 2, 1874, P. L. 271, entitled " An act authorizing the formation of partnership associations in which the capital shall alone be responsible for the debts of the association, except under certain circumstances," and its supplements, on the 21st day of March, 1892, signed and acknowledged a statement in writing, in proper form, as required by said act, setting forth: (1) The names of the subscribers as above given, and the amount of capital subscribed for by each, as follows : Jesse D. Snyder, $500 ; Joseph H. Evans, $500 ; Charles R. Hoffman, $500 ; Jacob C. Bay, $500 ; George A. Gebhart, $500 ; Ferdinand Gramlich, $500 ; Charles M. Renaut, $500, and Elmer E. Brewer, $500. (2) That the total amount of capital is $4,000, whereof $3,000 has been paid into said association and the balance is all to be paid on or before July 1, 1892. (3) That the character of the business to be conducted is " the manufacture of mantels, general mill work for house and building furnishing, hard-wood trimming and all kinds of ingenious hand work in wood," and that the place of business was the city of Williamsport, Pa. (4) That the name of said association was " The Mill Work and Mantel Company, Limited." (5) That the contemplated duration of the association was to be three years and (6) the names of the managers and officers of the association.

[This statement or certificate was duly recorded in the office of the recorder of deeds in Lycoming county on March 17, 1892, and thereupon the subscribers thereto commenced the business described therein at their factory on East Third street, in the city of Williamsport.] [2]

[The evidence shows that at the date of the recording of said statement, to wit: on March 17, 1892, although the same recites that $3,000 of the capital subscribed for had been paid into the association, only $750 thereof had actually been so paid, of which amount $500 had been paid by Jesse D. Snyder on March 7, 1892, and $250 had been paid by Elmer E. Brewer on March 15, 1892.] [1]

[On July 1, 1892, the date appointed in the recorded statement for the payment of the remaining $1,000 of the capital subscribed for, there had been paid into the treasury of the association the sum of $3,794.50, which amount, except the sum of $750, paid by Jesse D. Snyder and Elmer E. Brewer prior to the recording of the statement aforesaid, had been paid at various times between March 17 and July 1, 1892, and of the entire amount so paid prior to the last named date, $500 had been paid by one David W. Reeder, who, it appears, on or about April 5, 1892, was elected and admitted as a new member of the association upon the same terms and obligations as the original partners.] [3]   All the capital, however, subscribed for by the original partners was finally paid into the association as appears from the stock account of the several partners contained in the general ledger of the association on pages 4, 5, 6, 7 and 8, offered in evidence.

[On or about July 27, 1892, Elmer E. Brewer retired from the association, selling out his stock or interest in the business to his fellow partners at the par value thereof.   As Mr. Brewer had, at that time, paid but $300 on account of the capital subscribed for by him into the treasury of the association, the several remaining partners paid him that sum in cash for his interest in equal proportions, and subsequently, in the same proportions, paid the balance of the stock subscribed for by him, to wit: $200, into the treasury of the association, thus increasing the capital of each to the extent of $62.50, and making the entire capital of each of the remaining partners in the association of the value of $562.50.] [4]

Subsequently some further changes were made in the membership by transfer of interests.   On June 5, 1893, Jesse D. Snyder sold his interest in the association to Theodore Kramer. On or about February 1, 1894, Ferdinand Gramlich sold his interest therein to Edward Fees, and on or about May 8, 1894, David W. Reeder sold his interest to Samuel H. Follmer.

On June 5, 1893, Theodore Kramer was elected a member of the board of directors, and said board thereupon elected him chairman thereof.

The minutes do not show that either Mr. Fees or Mr. Follmer were ever formally elected members of the association, but it appears that they were present at meetings and were recog-

nized by the other partners as members in the management and conduct of the business.

[The admission of David W. Reeder as a new member had the effect of increasing the capital of the association by the amount of $500.] [5] No certificate of this increase of capital with the several changes of membership and transfer of interests appears on the record in the recorder's office. The only record found in said office relating to said association is that of the original statement made on March 17, 1892.

[It further appears that no book designated as a subscription list book was kept by the association.] [6] Stock accounts, however, with the several partners were kept in the general ledger. In these accounts each partner is credited with the amount of capital paid into the association, specifying the date or dates when the same was so paid in.

It further appears that at the time of the formation of the association the several partners were employed as mechanics, laborers, etc., in and about their factory, and for their services thus rendered the association agreed to pay them wages at a stipulated price per day, and it was also mutually agreed and understood among them at that time, though this agreement was not specifically spread upon the minutes, that each partner should for a time draw $1.00 per day on account of his wages, and as the capital of the association was small, would allow the balance of his wages earned to remain in the treasury to facilitate the business until such time as the condition of the business would enable them all to draw their wages in full. This arrangement continued for several months, when it was further agreed among them that each should draw $1.50 per day on account of the wages earned by him, and later on said agreement was still further modified so as to allow each partner to draw 75 per cent of his wages and allow the balance thereof to remain in the treasury as aforesaid. There is some evidence to show that at a meeting of the association held some time in August, 1893, the above agreement was rescinded, and it was decided that thereafter the partners should draw their wages in full. [No such action, however, appears upon the minutes, and as a matter of fact the prior arrangement to draw only 75 per cent of their wages continued in force until the date of the assignment.] [7]

The several accounts of the partners (marked "private"),

with the association, appear upon the general ledger offered in evidence, where each partner is charged with the various sums of money paid him from time to time on account of wages, and credited with the amount of wages earned by him monthly.

The association having become embarrassed in business on the 3d day of September, 1894, made a general assignment of all its effects to Joseph T. Long for the benefit of creditors. The deed of assignment bearing date September 3, 1894, is drawn in the usual form and executed in the name of the Mill Work & Mantel Company, Limited, by Theodore Kramer, chairman, and Charles R. Hoffman, secretary and treasurer, and is duly recorded in the office of the recorder of deeds in Lycoming county, the date of record being September 4, 1894. The assignee entered upon the duties of his trust, and on January 1, 1895, filed his account in the court of common pleas of Lycoming county as hereinbefore stated. On September 14, 1895, your auditor was appointed to make distribution of the balance, to wit: $4,550.95, in the hands of the assignee, as shown by said account. Subsequent to the execution of the deed of assignment aforesaid Joseph H. Evans, George Gebhart, Charles M. Renaut, Jacob C. Bay, Samuel H. Follmer, Charles R. Hoffman and Theodore Kramer, who are members of the Mill Work & Mantel Company, Limited, each brought suit against the said association to recover the balance due them for wages, as shown by the books of the association. The writs of summons in each case were regularly served upon the officers of the association. No defense was made, and in due time judgments were obtained in each case against the association for the respective amounts claimed, which judgments, with the subsequent proceedings had thereon, have been offered in evidence before the auditor and are set forth in the foregoing statement of claims. The plaintiff's statement of claim as filed in each of these cases, and upon which the judgment was obtained, and which forms part of the record therein, sets forth specifically the amount claimed, the nature and character of the particular services rendered, that the same were rendered in and about the defendant's business of manufacturing mantels and wood work, etc., at their manufactory on East Third street, in the city of Williamsport, Pa., and specifying the time when the services were rendered and the price agreed upon to be paid therefor, etc.

The plaintiffs in these cases basing their claims for preference upon the provisions of the act of assembly giving a preference to mechanics, laborers, clerks, etc., for wages not exceeding $200, and invoking the aid of the Act of April 20, 1876, section 2, P. L. 43, for the recovery of the same, which section provides : " That no voluntary assignment for the benefit of creditors, shall operate so as to hinder, delay or prevent for a longer period than thirty days from the time of such assignment, the collection or enforcement of any of the claims for the wages of labor secured and protected by the act for the better protection of the wages of mechanics, miners, laborers and others, approved the ninth day of April, one thousand eight hundred and seventy-two, and its supplements, and said claimants may, after the expiration of thirty days from the date of such assignment, enforce the collection of their claims in the same manner, and by means of the same remedies that they might have done had no such assignment been made," issued attachment executions upon the judgments aforesaid, making Joseph T. Long, the assignee, garnishee. Interrogatories in proper form were filed and served upon the garnishee, whereupon the garnishee made answer, admitting the balance in his hands, as shown by his account.

Rules were then taken by the plaintiffs in each case upon the garnishee to show cause why judgment should not be entered against him for the amount claimed as preferred and costs, upon the facts admitted in his answers.   The court, thereupon, made the following order in each case:

" And now, to wit: September 21, 1895, it appearing to the court that Joseph T. Long, the assignee for the benefit of creditors of Mill Work and Mantel Company Limited, has filed his final account in this court to No. 23, December term, 1894, which account has been confirmed absolutely.   And it further appearing to the court that J. L. Meredith, Esq., has been appointed auditor to distribute amongst those entitled thereto, the funds in the hands of the said assignee, the rule heretofore granted in this case, to show cause why judgment should not be entered against the said assignee, garnishee, as aforesaid, upon the facts admitted in his answers to the interrogatories of the plaintiff be and the same hereby is referred to the said auditor for adjudication."

The counsel for the several plaintiffs in the judgments above mentioned claim that these judgments and the proceedings had thereon now come before the auditor with the same force and effect as when heretofore pending before the court, and as the proceedings in all these cases were for the purpose of collecting the amounts claimed as preferred, from the moneys in the hands of the assignee when before the court, they now come before the auditor for adjudication in the same manner—the position being that the judgments recovered against the Mill Work & Mantel Company, Limited, are conclusive adjudications of the facts and matters involved therein, and cannot be attacked before the auditor except for fraud or collusion. They further contend that no fraud or collusion has been shown in the recovery of said judgments, and that they have proceeded regularly under section 2, of the act of April 20, 1876, "to enforce the collection of their claims in the same manner and by means of the same remedies that they might have been, had no such assignments been made," and therefore are entitled in this proceeding to have the preferences claimed under the act of assembly for wages earned during the six months preceding the assignment, satisfied out of the fund in the hands of the assignee.

Max L. Mitchell, Esq., counsel for divers general creditors of the assignors, opposed the allowance of the preferences claimed in said judgments : (1) Because having failed to comply with the act of June 2, 1874, and its supplements, the association, at the date of the assignment, was a general partnership.   And (2) Because the judgments, (as he contended) were fraudulent and collusive, and therefore must be disallowed or disregarded until the claims of all the bona fide creditors are satisfied.

The auditor, upon the foregoing statement of facts, finds and reports the following conclusions of law :

[First—It was competent on the part of the general creditors of the assigned estate, in this proceeding and under the circumstances of this case, to show that in the formation of the association known as the Mill Work & Mantel Company, Limited, the members thereof had not complied with the act of assembly of June 2, 1874, and its supplements.[ [11]

[Second—The fact that the subscribers to the capital stock of the association known as the Mill Work & Mantel Company,

Limited, asserted in their certificate of association recorded March 17, 1892, that $3,000 of the capital of $4,000 subscribed for, had been paid into the association, whereas in truth and in fact only $750 thereof had, at the time, been paid into the association, together with the fact that they caused no record in the form of amendment to be made in the proper office, showing the increase of the capital by the admission of David W. Reeder into the firm, and the further fact that they kept no proper subscription list book as required by the act of assembly, was a palpable noncompliance with the provisions of the act of June 2, 1874, and therefore said association never became a partnership limited, within the meaning of the said act, but from the date of the recording of said certificate or statement was a general partnership, and became liable to its creditors as such.] [12]

[Third—The deed of assignment of September 3, 1894, though executed in the name of the Mill Work & Mantel Company, Limited, by the president and the secretary and treasurer must be presumed to have been made with the assent and concurrence of the members of said association, and conveyed to the assignee, Joseph T. Long, the assets of a general partnership.] [13]

[Fourth—That the fund or balance now in the hands of the assignee, as shown by his account filed, and which the auditor has been appointed to distribute, arises from the assets of the Mill Work & Mantel Company, Limited, as a general partnership association and must be considered and treated as such in this distribution.] [14]

[Fifth—That the judgments obtained by the several labor claimants, who were members of the association held out to the public as the Mill Work & Mantel Company, Limited, against said association, though regular upon their face, are not judgments against the individual members of the Mill Work & Mantel Company, Limited, as a general partnership, and are not entitled to payment either in whole or in part out of the funds now for distribution as against the creditors of the general partnership.] [15]

[Sixth—The plaintiffs in said judgments are, therefore excluded from any share in the fund now for distribution in the hands of the assignee.] [16]

OPINION OF THE AUDITOR IN SUPPORT OF THE FOREGOING
CONCLUSIONS.

At the outset it is proper to observe that the plaintiffs in the judgments mentioned have no equity in their favor as against the general creditors. To hold that these plaintiffs should be permitted to file and record a false statement, asserting that $3,000 of the capital subscribed for had been paid, when in fact only $750 thereof had actually been paid into the treasury of the association, thus misleading the public and parties who might desire to deal with them, in utter disregard of the act of assembly requiring a truthful statement to be filed, and then after a voluntary assignment has been made and a fund realized for their creditors, which, at most, will only pay them in part, to allow them to come in upon this fund and sweep it away from their creditors, presents anything but a strong appeal to a chancellor and could be justified only upon the most rigid rules of law.

It was certainly competent, in order to make a proper distribution of the fund, for the auditor to have a clear understanding of the nature and character thereof, just how it arose, and the manner in which it comes before him for distribution among the creditors. It is either a fund arising from the assets of a limited partnership association or of a general partnership. The mere fact that the deed of assignment was executed in the name of the association, limited, by those who had been elected officers, does not make the association a limited partnership within the meaning of the act. If the members did not comply strictly with the law the attempt to form a limited partnership was a failure, and conferred upon them no rights or immunities under it. It was not within the power of the members to merely declare themselves a limited partnership except by a strict compliance with the law in its formation. If this be true it seems to the auditor that it was proper to be shown that there was not a compliance with the law. The evidence to show this cannot be construed in any proper sense as a collateral attack upon the judgments of the labor claimants, although the effect might be that no part of the fund could be applied to them in the distribution. Because these plaintiffs brought suit and obtained judgment against the association as a limited concern without objection or defense set up, it does not follow that these judg-

ments must be paid either in full or in part, or by way of preference, out of the assets of a concern holding itself out to the world as a limited association, but which were in fact the assets of a general partnership. It is true, as contended by counsel for these plaintiffs, that the authorities declare that a judgment regular on its face cannot be questioned by creditors before an auditor, except for fraud or collusion affecting them. It is, however, competent for the creditors to adduce evidence showing that the fund for distribution is of such a character that it may not be applied in payment of the particular judgment seeking payment out of it. In other words, the judgment may be regular upon its face and allowed to stand as rendered, and yet it may have no right to share in the particular fund to be distributed. This cannot in any manner affect the validity of the judgment. The auditor is, therefore, of opinion that the evidence offered was. competent for the purpose of showing the character of the fund in the hands of the assignee, viz : that it has the quality attached to it arising from the assets of a general partnership, and not from those of a limited one.

If this evidence is competent, as the auditor thinks it is, then the Mill Work and Mantel Company, Limited, never became a partnership limited, and the members thereof never became entitled to the protection of the act of 1874 and its supplements. Not only did the members make an untruthful statement in the certificate recorded at the outset as to the amount of capital paid in by them, but they failed to cause any record to be made in the proper office of the increase of their capital by the admission of Mr. Reeder into the firm as a new member. By the admission of Mr. Reeder an important change was made in the condition of the association, both in respect to its capital and membership, and it was essential that the public should have been informed thereof in the manner pointed out by the act so that creditors and others might determine from the record whether the association in its then condition was entitled to credit, and to what extent credit might be given.

Again, the association never kept a subscription list book, as described in the act. The general ledger of the association containing the stock accounts, with the members as above described, was not the kind of book contemplated by the act. Such ledger was the private book of the association, containing

the general business accounts, and was not such a book as could be expected "to be open to inspection by creditors and members of the association at all reasonable times," and yet the language of the act of 1874 on this subject is imperative that a proper subscription list book for the purpose therein mentioned shall be kept by the associations intended to be protected by it. All that the members of this association have done in order to avail themselves of the privileges and immunities of the act was merely to execute and record a written statement in the form prescribed therein, but which, in an essential particular was not true, and therefore misleading. The act was intended to protect the members of partnership associations from liability beyond the capital subscribed for. And it is necessary that all the essential provisions thereof should be complied with, otherwise such protection will not be given and they will be held liable to creditors as general partners. All our decisions are emphatic on this point. In Maloney v. Bruce, 94 Pa. 249, Mr. Justice PAXSON said: "If parties seek to have all the advantages of a partnership and yet limit their liability as to creditors they must comply strictly with the act." This principle has been strictly adhered to in numerous subsequent cases, among which may be cited the following: Bement v. Brick Machine Co., 5 W. N. C. 58; Keystone Boot & Shoe Co. v. Schoellkopf's Sons, 11 W. N. C. 133; Eliot v. Himrod, 108 Pa. 569; Hite Natural Gas Co.'s App., 118 Pa. 436; Hill v. Stetler, 127 Pa. 145; Vanhorn v. Corcoran, 127 Pa. 255; Sheble v. Strong, 128 Pa. 315. If they do not so comply with the act their liability to creditors is not limited, and as they have the advantages of a partnership they are liable as general partners.

It is possible that the partners in this case meant to act in good faith and supposed they were complying with the law, but the question of their liability is held to depend not upon their good faith, but upon their acts. In Hill v. Stetler, 127 Pa. 159, the court says: "Our business is not with their motives (meaning the partners) but with what they did; and our inquiry is whether the association was organized in accordance with the fair interpretation of the act of 1874."

The ground upon which this and similar cases (though brought to charge the members with liability as general partners) seem to be based is, that without a strict compliance with the act, no

limited association has been formed, and hence the liability of the members as general partners.

Mr. Justice WILLIAMS in the case just referred to, in commenting upon the particular facts in that case on page 158, says: "To enter upon business with the credit which the possession of a paid-up capital of $25,000 would give the association when in fact nothing had been paid either in money or property, was an evasion of the law and a fraud upon the public." And again, on pages 162 and 163, he further says: "If no capital has been put into the concern, no actual cash with which to begin business, it.has no right to begin business. The subscribers have no right to record the certificate, and to do so is a fraud upon the law and a fraud upon the public. We do not say the entire capital must be paid down. The law does not say so, but seems to contemplate a payment by instalments. What we do say is, that until some part of the capital has been paid in conformity with the certificate, the recording of the certificate is not authorized by that law, and can give no business life to the limp and empty framework of the association."

In the case of Vanhorn v. Corcoran, 127 Pa. 268, Mr. Justice PAXSON uses this language: "Prima facie a firm transacting business is a general partnership. It can only shelter itself behind the act of 1874 and its supplements by showing a strict compliance with the law. It was said in Eliot v. Himrod, 108 Pa. 569: 'Each partner is liable unless saved by the statute. If the partners have not complied with the statutory requisites a limited partnership has not been formed.' To the same effect is Maloney v. Bruce 94 Pa. 249. This is the key to the whole situation. A limited partnership that has not complied with the law of its creation is not a limited partnership at all; it is, however, a partnership in which all the members are liable at common law." In Sheble v. Strong, 128 Pa. page 322, the court says: "The question is not one of good faith on the part of the defendants, or of notice to creditors, but whether in their attempt to form a limited partnership, they conformed to the law. If they did not their attempt was abortive. And it is no defense that creditors had actual knowledge of the facts required to be set out in the recorded statement." Farther on in the same opinion it is said: "All the cases on the subject sustain the position that a strict compliance with the statutory requirements

is essential to the formation of a limited partnership. Where there is no record of such a statement as the statute requires there is no statutory association. Where immunity from liability is claimed under the provisions of the act it is competent for the plaintiff either to point out a fatal defect on the face of the recorded statement, or to prove that an essential requisite, though formally stated, is falsely asserted." Under these decisions and others to the same effect, which might be cited, the auditor is of opinion that in the case of the Mill Work and Mantel Company, Limited, no limited association has ever been formed, and that the association known by that name was, from the beginning, a general partnership. If he is correct in this opinion, then the acts of such partnership so far as creditors are concerned, were those of a general partnership, and hence the assignment to Long as assignee for the benefit of creditors, passed to him the assets of the general partnership.

In the absence of evidence to the contrary, and in view of the fact that the members of the partnership are here claiming part of the money arising from the assigned effects the deed of assignment executed in the name of the association by its president and secretary, must be presumed to have been so executed by and with the assent of the members thereof. And hence these officers are to be treated and considered as their agents in effecting the transfer of the assets to the assignee.

The partners, evidently, intended in good faith, to transfer all the firm property in trust for their creditors. And in pursuance of such assignment the property and assets of the firm were actually delivered into the possession of the assignee and he has converted the same into money.

Moreover the amount of undisputed claims presented before the auditor being largely in excess of the fund for distribution, shows clearly that at the time of the assignment the firm was insolvent.

Under these circumstances it was competent for Mr. Kramer, who signed the deed of assignment as president, and Mr. Hoffman, who signed it as secretary and treasurer, by such deed to convey the assets of the firm as a general partnership to the assignee. It was not necessary for all the partners to join in executing the deed of assignment in order to pass the assets of such partnership. In the case of Deckard v. Case, 5 Watts, 22,

it was held that one partner may transfer the whole stock in trade of the firm ; and if possession be delivered, and the transaction be bona fide, it matters not whether the instrument be under seal or otherwise. This was virtually admitted to be the law by GIBSON, C. J., in Moddwell v. Keever, 8 W. & S., where on page 64 he says : "It has been said in Deckard v. Case that one partner may assign the whole joint effects. Perhaps he may, but only as the agent of the firm and by an act done in its name." Deckard v. Case was followed in James's Estate, 1 Ch. Co. Rep. 462. See also Trickett on Assignments, pages 5 and 6 ; Bullitt v. Chartered Fund, 26 Pa. 108 ; Clark v. Wilson, 19 Pa. 414 ; McNutt v. Strayharn, 39 Pa. 269.

The property of the firm having thus come into the possession of the assignee as the assets of the general partnership, it follows that the fund arising therefrom is of the same character and must be distributed to the creditors of the firm as the creditors of the general partnership. The result therefore is that the judgments of these labor claimants, who are members of the firm, having been obtained against the Mill Work and Mantel Company, Limited, cannot share in the distribution, either as preferred creditors or otherwise. These claimants being members of the general partnership could not sue themselves and cannot claim any part of the fund in this proceeding as against the general creditors, who are entitled to claim it as derived from the assets of the general partnership. In this view of the case we do not question the validity of the claimants' judgments. They stand as the suits were brought against the concern as a limited association while the general creditors stand in entirely different relation in respect to the fund for distribution—the latter being in the same position as if they had sued the partners composing the firm for the purpose of holding them liable as general partners. Even if these general creditors had sued the concern as a limited association, they would not be estopped from maintaining suit against the partners composing it. This was decided in the case of Sheble v. Strong, supra, where Justice STERRETT, in delivering the opinion of the court, clearly points out the difference in character and effect between such actions in the following language : "The two actions are not the same either in form or effect. In the one the association is made defendant without naming the individuals who

compose it, and service of process is made on one of the officers, who are agents of the members only to the extent of their interest in the association. In the other, the persons who compose the general partnership are joined as defendants, and if liable at all as partners each is liable for the entire debt and not merely to the extent of his interest in the partnership, provided all are served with process or voluntarily appear. The measure of liability in each respectively is different. In the one it is general, in the other it is limited to the property of the association, which, of course, includes unpaid stock due by individual members."

It becomes evident, therefore, that the judgments of these claimants may be allowed to stand as they were rendered, and their validity remain unquestioned, but their relation in respect to the fund is such that they can claim no part of it. Those creditors only can claim it who have the right to do so by virtue of their position as creditors of the general partnership.

If the claimants in these judgments take nothing from the assignment the fault lies with themselves, in that they failed to organize a limited association by reason of their non-compliance with the law. Upon the facts as proven in this proceeding, and the law applicable thereto, the auditor is of opinion that the money in the hands of the assignee was not attachable at the suit of these labor claimants, and that the court would have refused judgment in each case against the assignee as garnishee, and as the evidence is now presented before the auditor, he must decline to award to them any part of the fund for distribution.

The second objection urged to the allowance of these judgments, to wit: that the same are fraudulent and collusive, and were obtained with intent to hinder and delay the creditors in the collection of their claims, appears to the auditor to be without merit. The auditor has carefully considered the evidence offered in relation to this subject, and he fails to see how it can be held to establish any fraud or collusion in the case. The judgments were obtained for the respective amounts due the claimants as shown by the books of the firm, and if the members thereof had in fact formed an association limited by compliance with the law, the claimants in these judgments would be entitled to participate in the distribution in the manner claimed for them.

Elmer E. Brewer who, as before stated, was one of the members of the firm at the time it commenced business, also presents a claim amounting with interest to $155.48. This claim is for wages earned by him during the time he was a member of the firm. No suit has been brought upon this claim, and no preference is claimed for it, but the claimant asks to share in common with others in the fund for distribution.

The opinion already expressed in reference to the claims of the other members of the firm need not be repeated here. It is sufficient to say that Mr. Brewer was one of the subscribers to the capital of the Mill Work and Mantel Company, Limited, and a party to the certificate of association recorded as aforesaid. He can stand in no better position than his fellow partners, and for the reasons given cannot share in the distribution.

The auditor further finds that all the claims presented and set forth in the foregoing statement, other than the judgments and claim of Elmer E. Brewer, were valid and subsisting debts against the assignors at the time of the assignment, and are entitled to share in the distribution. It appears, however, that the claim as presented by William A. Long & Company should be reduced by the sum of $33.08 by way of set-off, for indebtedness due by said firm to the assignors at the time of the assignment. This indebtedness the assignee has not collected, but it seems he has charged himself with the same in his account as filed. It is but justice, therefore, under the circumstances, that the firm of William A. Long & Company should be awarded their proper pro rata share of the fund for distribution, and that the assignee should be given credit for the debt of $33.08 not collected by him. In making the distribution this has been done.

In the matter of the claim of the First National Bank of Williamsport it appears that certain claims and accounts held by the assignors against divers parties were transferred to said bank prior to the assignment, as collateral security for the payment of the notes embraced in the claim presented by said bank. Upon these collaterals various sums of money have since the assignment been realized by the bank. Making due allowance for the several sums so realized, the auditor ascertains the balance due the bank on January 9, 1896, was $2,521.13.

From the principle that creditors become, by the assignment,

equitable owners of the assigned estate, it follows that, though after the assignment, partial payments were made from the estate of another person than the assignor, who is liable for the same debt, or from a part of the property of the assignor not embraced in the assignment, or from a part of the property which is embraced in the assignment but in virtue of a lien paramount to it, any dividend to be made from the proceeds of the assigned effects will be made upon the basis of the debt as it existed when the assignment took place, without regard to these subsequent reductions, provided, however, that in no event shall the creditor get more than his whole claim with interest: Trickett on Assignment, page 208, section 185. See also Morris v. Olwine, 22 Pa. 441; Keim's Appeal, 27 Pa. 42; Miller's Appeal, 35 Pa. 481; Patten's Appeal, 45 Pa. 151; Brough's Estate, 71 Pa. 460; Hess' Estate, 69 Pa. 272; Graeff's Appeal, 79 Pa. 146; Bair & Shenk's Appeal, 82 Pa. 113.

Under these authorities the auditor decides that the bank is entitled to a dividend in common with other creditors on its entire claim as it existed at the time of the assignment as a basis of distribution.

As the fund for distribution is insufficient to pay the claims established against it in full, the auditor has accordingly awarded to the bank its proper pro rata share of the fund upon its entire claim at the time of the assignment, with interest computed to January 9, 1896.

The auditor found a balance for distribution, after allowing for costs of audit, amounting to $4,225.37, which allows a dividend of 28.84 per cent among the creditors excluding the claims of the several members of the firm who were plaintiffs in the judgments against the limited partnership association.

Exceptions, twenty-two in number, were filed to the report of the auditor which were dismissed by the court below in the following opinion by METZGER, P. J.

The most important question raised by the exceptions to the auditor's report is whether the auditor erred in finding the members who composed the Mill Work and Mantel Company, Limited, general partners. The facts necessary to a proper adjudication of this question have been found by the auditor and of the correctness of his findings we have no doubt. The original

members of the firm, who subscribed and acknowledged the certificate required by the act of 1874, complied with all the requisites of said act, so far as relates to the form of the certificate, and no defect is apparent on the face thereof. If, therefore, the facts contained in the certificate had been correctly stated, the organization of the firm as a limited partnership would have been complete. But the evidence clearly shows, and the auditor has so found, that the statement made in the certificate filed as to the amount of the subscription paid in at the time of the filing of the same was in fact a false statement. The amount of the capital subscribed was four thousand dollars, and it is asserted in the certificate that of this sum three thousand dollars had been paid into the association, whereas, in truth and in fact, there had been but seven hundred and fifty dollars paid in at the time of the filing of said certificate; neither was the balance of the subscription, being the sum of one thousand dollars paid in at the time when it was required by the terms of the certificate to be paid. Neither did the association keep a subscription list book as required by the act of assembly. The mere entry in their general ledger of the amounts paid by the respective parties certainly cannot be regarded as a compliance with the provisions of the act of assembly. The act contemplates a subscription list book to be kept open to the inspection of the public, from which it must appear what amount has been subscribed by the respective parties, and what the balance due is from each subscriber on his subscription. The purpose of this is to enable the creditors readily to ascertain from this book what amount each subscriber is left yet liable for on his subscription. Had the three thousand dollars been paid in cash at the time of the recording of the certificate such subscription book might not have been absolutely necessary. It is true there was an instalment of one thousand dollars which was not to be paid until July 1, 1892, and for this reason such book should have been kept, yet the omission to do so might not of itself made the parties general partners. The certificate being in due form, if it contained no false statement of any material fact required to be stated by the provisions of the act of assembly, the limited partnership would have been duly organized, and the omission afterwards to keep a subscription list book would not, in our judgment, in such case destroy the organiza-

tion.   It is also undisputed that after the filing of the certificate and the commencement of the business by the firm a new partner was introduced into the firm and the assets thereof were increased five hundred dollars.   There were also other changes made in the membership of the firm, several of the original members disposing of their stock to other parties, who, although never formally elected to membership, in fact became members of the association and took part in all meetings of the association held subsequently, voting and participating in all the proceedings at the meetings of said association, and were recognized and treated as partners by the other members thereof.

The facts being as we have stated, it seems to us that these parties did not comply with all the requisites of the act of assembly, under which they attempted to effect an organization, and are therefore not entitled to the protection given to an association created by virtue of said act.

We do not think it necessary to review the authorities bearing on this question.   The auditor has cited most, if not all the authorities that are pertinent, and from an examination of them it seems to us to be perfectly clear that where any essential requisite is falsely stated in the certificate, the organization as a limited partnership under the provisions of the act of 1874 is not complete, and cannot exist, and the parties are not entitled to immunity from liability under the provisions of said act, but remain and continue to be liable as general partners.   Certainly the statement filed must, among other things, state the total amount of capital and when and how to be paid.   This, therefore, is an essential requisite, and if falsely stated will prevent the parties from being entitled to the benefits of the provisions of said act.   In the case in hand it is undisputed that the allegation contained in the statement filed that $3,000 of the capital stock had been paid into the association was false.   It seems to us that if there were no other reason for holding these parties to be general partners this of itself would be sufficient.   The statement filed was vitiated, and in our judgment could not be made good by a payment or payments made long after the filing of the same.   If the organization ever existed as a limited copartnership it must have come into life and existed the moment the certificate provided for by the act of assembly was filed and recorded.   But in this case the parties seem never to have at-

tempted strictly to comply with the provisions of said act, either at the time of the organization or afterwards. They kept no subscription list book, such as is required by the act of assembly, and which in this case was absolutely necessary because of their failure to pay the amount of the capital subscribed. Again, they never filed of record any amended statement, either of the changes made in the membership of the firm or the change made in the capital stock of the association. The act of assembly, after setting forth the essential facts that are to be contained in the statement to be filed, provides that any amendment of the said statement shall be made in like manner. It is argued now that in this case no amendment was made, because these changes the parties had a right to make by the provisions of said act without filing and recording any statement thereof. If this be true then they could change all the parties to the original organization; they could change the entire capital of the same, or make any other change whatever in the original statement, and yet not be required to put it in the form of an amendment and file and record it. This doctrine we cannot subscribe to. Any amendment means any alteration, and surely it is a very material alteration when new parties are introduced into the organization and the capital of the same is either increased or diminished. It certainly is very important that the public dealing with such an organization should know exactly who the parties are that compose it. Credit is probably more frequently given on the faith of the parties who are associated than upon the faith of the capital invested. Because in these associations there is no liability beyond the capital subscribed, if the organization is properly effected, and hence the character and business qualifications of the parties composing the association is most important to be known to the public. It is true that under the provisions of the act of 1858, which has reference to limited copartnerships formed under the act of 1836, statements of these changes, although required to be recorded, were declared not to work the destruction or dissolution of the partnership; but the organizations at that time were entirely different from those under the act of 1874. Yet if it were not for the act of 1858, even under the act of 1836, such amendments, if not recorded, would have worked a forfeiture of the rights of the limited partner and made him a general partner. The organization under the

act of 1874 is more like a corporation and under it no party is liable beyond the amount of capital subscribed. All its provisions are unknown to common law, and hence the courts have pretty uniformly held that its essential provisions were mandatory, and that a strict compliance with the act was necessary to entitle the parties to protection from general liability. It is, however, unnecessary in this case that we should hold that a neglect to make a statement of these changes and file and record them worked the forfeiture of the right to members of the association to claim the provisions of said act, because, as we have stated, the organization was void from its inception, by reason of the false statement of an essential requisite made by the parties in the certificate as filed and recorded. We do, however, in this case hold that the neglect to comply with these essential requisites taken in connection with the fact of their carelessness in making the false statement they did when they attempted to effect their organization justifies us in ruling that these parties are not entitled to claim the assets of this firm to be those of a limited copartnership. Such utter disregard of the provisions of said act as has been shown in this case cannot by any means known to us be tortured into a substantial compliance with the terms of said act, and a substantial compliance with the act is required by all the decisions of the Supreme Court of this state, so far as we have been able to understand them.

The learned auditor was therefore right in finding that the assets of this firm were the assets of a general partnership, and not those of a limited partnership or stock company, under the act of 1874. The fact that the assignment on its face purports to be that of a limited copartnership cannot avail them. If there was no limited copartnership existing under the act of 1874, then when they attempted to make an assignment of their assets they did not assign the assets of the limited copartnership, because they could not make an assignment as an organization when such an organization had no existence. Hence, if the assignment is valid at all it passed to the assignee the assets as the property of general partners. Its validity is not questioned; neither could it be, because it was the act of the parties themselves.

The auditor then, having properly found that the assets were

the assets of a general copartnership, it follows that he clearly must be right in holding that the assets in the distribution would have to be applied to the general creditors of the firm. Hence the judgments that these individual partners had ob- tained against the firm as a limited copartnership could not par- ticipate in this distribution.    It is not claimed for a moment by these partners that they had any judgment or lien upon any por- tion of the funds other than the fund of the limited association. They, therefore, were not entitled, although they had judgments against the limited association, to come in on distribution on the fund which has been properly found to be the fund of a general partnership.    If they could succeed in having distribu- tion made to their claims, then not only in this case, but in any other case where the partners have failed to comply with the provisions of the act of 1874, under which they have attempted to organize, they can come in and sweep away every dollar of their joint assets, and thereby prevent their creditors from get- ing any portion of their claim, and we think such a course of proceedings is so inequitable that it ought not to be sustained unless the law compels us to do so.

We are very much relieved to be able to conclude that such a proceeding is not only not justified in equity, but that there is no warrant of law to sustain it.

We are therefore of opinion that the learned auditor did not err in his finding, and thereupon we dismiss the exceptions filed to his report, and confirm same absolutely.

*Errors assigned* were 1–7 in dismissing exceptions (1 to 7) assigning error in the auditor's findings of fact, reciting same ;

8–10. Dismissing exceptions to the auditor's report, alleging error on the part of the auditor in failing to make certain speci- fied findings of fact, as follows: (8) In not finding as a matter of fact that the members of the Mill Work & Mantel Company, Limited, complied in all respects with the requirements of the several acts of assembly of the commonwealth of Pennsylvania relating to the formation and government of partnership asso- ciations limited. (9) In not specifically and expressly stating as a separate finding of fact that all claims of the general cred- itors, introduced before him and allowed to participate in the

distribution of the funds, were contracted after the full amount of the capital stock of the Mill Work & Mantel Company, Limited, had been paid into the treasury. (10) In not specifically and expressly finding as a separate finding of fact that the assignment of the Mill Work & Mantel Company, Limited, to Joseph T. Long, in trust for the benefit of creditors, was made by the said concern in the capacity of, and under the character of, a partnership association, limited.

11–16. In dismissing exceptions to auditor's report assigning error in the auditor's conclusions of law, reciting same.

17–20. Dismissing exceptions to the auditor's report, assigning error in not reaching the following conclusions of law as follows : (17) In not concluding as a matter of law that in view of the fact that all of the claims of the general creditors were contracted subsequently to the date when it was admitted that the full capital of the association was paid in in cash, and subsequently to the acts which were alleged to have been a violation of the law of the creation of the Mill Work & Mantel Company, Limited, and in view of the fact that, therefore, they could not have been injured by any of the alleged matters, that they could not complain of the same or allege the same as a reason why as to them the members of the association should be held liable as general partners.    (18) In not finding as a matter of law that the general creditors could not raise, and he as auditor in this matter, could not adjudicate the question of whether or not by the acts or omissions of the members of the association, they became liable as general partners.    (19) In not finding as a matter of law that inasmuch as the funds before him for distribution were in the hands of a voluntary assignee created, and were the result of the assignment made by the Mill Work & Mantel Company, Limited, in the capacity of a partnership association, limited, formed under the act of 1874, and its several supplements, that therefore it was not competent for the claimants before him as general creditors to raise, nor for him as auditor to adjudicate the question that the said concern was a general partnership, and that the funds in question should be distributed as those of a general partnership.    (20) In not finding as a matter of law that the right of the exceptants to the preference which they claim would have to be adjudicated

upon the records of. their judgments and attachment executions, and that it was not competent for him to inquire into any facts dehors the said records.

21. In dismissing the 21st exception that "the learned auditor erred in not allowing to each of the exceptants the claim for preference made by him."

22. In dismissing the 22d exception : (22) In making no distribution to the judgments recovered by the exceptants against the Mill Work & Mantel Company, Limited, and offered in evidence before him.

23. In confirming absolutely the report of the auditor.

24. In not distributing to the appellants the $200 claimed by them to be preferred as wages, and a pro rata amount with the other creditors for the balance of their judgments against the assignor.

*T. M. B. Hicks*, with him *W. H. Spencer*, for appellants.

*Max L. Mitchell*, with him *John J. Reardon*, for appellees.

OPINION BY WILLARD, J., March 17, 1897 :

When the association, known and doing business as the Mill Work and Mantel Company, Limited, made its assignment for the benefit of creditors, it was either a general partnership or a joint stock company under the act of June 2, 1874 and its supplements.

The written assignment was sufficient to pass its property as a joint stock company (created under the provisions of said act and its supplements) to the assignee. If it was a general partnership, the assignment executed by two of the partners was also sufficient to pass the property of the general partnership to the assignee unless the other partners positively dissented therefrom. The first proposition is sustained by a fair construction of the instrument itself and the act of assembly, and the second by Hodenpuhl v. Hines, 160 Pa. 466.

In Pennsylvania, prior to the act of 1874, joint stock companies were declared to be general partnerships : Babb v. Reed, 5 Rawle, 151 ; Kramer v. Arthurs, 7 Pa. 165 ; Hedge's Appeal, 63 Pa. 273. By the act of June 2, 1874, entitled "An act

authorizing the formation of partnership associations, in which the capital subscribed shall alone be responsible for the debts of the association, except under certain circumstances," ample provision is made for carrying on legitimate business by three or more persons without incurring any liability beyond the capital stock subscribed. While this act was intended to benefit those who wished to engage in a common business enterprise by a combination of capital, it was not intended as a cloak for fraud, falsehood or deception. Our Supreme Court, from the passage of the act to the present time in frequent adjudications, has held parties availing themselves of its provisions to a strict compliance with its terms. Evasions and subterfuges have been discountenanced, bona fide associations sustained, and the rights of persons dealing with these organizations rigidly protected.

On March 12, 1892, George A. Gebhart, the appellant, and seven others associated with him, signed, sealed and acknowledged articles of association in conformity with the act of 1874, which articles were duly recorded. In the statement so signed and acknowledged they set forth, among other things, that the amount of their capital stock subscribed was $4,000; that $3,000 thereof had actually been paid into the association at the time the statement was made, and that the balance was to be paid on or before July 1, 1892.

The auditor found as matter of fact upon what appears to be sufficient testimony taken from the books of the association that the statement as to the amount paid in, to wit, $3,000, was false when made, and that only $750 had actually been paid in at the time the statement was made. The auditor also found as matter of fact that no subscription list book was kept by the association as required by the act. The second section of the act provides among other things as follows: "and the said court or judge may compel the production of the books of the association, showing the names of the members thereof and the amount of the capital remaining to be paid upon their respective subscriptions . . . . and the said association shall be and it is hereby required to keep a subscription list book for that purpose and the same shall be open to inspection by the creditors and members of the association at all reasonable times." Under this provision of the statute there can be no question as to what

constitutes a subscription list book, and it is evident from the facts found that no such book was ever kept by the association to which the appellant belonged. He and the appellants in the other cases argued with it as one appeal, claim that the association was a valid association organized under the statute and that as members thereof they are entitled to its protection. Under the facts found by the auditor we must hold that they were general partners. Their statement was materially untrue when filed, and they never kept a subscription list book. That which was an essential requisite as to the amount of capital paid in was formally stated in the recorded articles, but the facts show that it was falsely asserted.

Under the authorities in Pennsylvania we must hold that the association was never legally organized in pursuance of the act of assembly, and under the facts found by the auditor we do not hesitate to declare its members general partners. The reasons for our so holding have been stated and reiterated in Eliot v. Himrod, 108 Pa. 569; Hill v. Stetler, 127 Pa. 145; Sheble v. Strong, 128 Pa. 315; Gearing v. Carroll, 151 Pa. 79; Haslet v. Kent, 160 Pa. 85; Bank v. Creveling, Miles & Co., 177 Pa. 270.

These authorities ought to be a sufficient guide to those who deem it advisable to unite their capital in conducting a business under the statute in question.

It is unnecessary to discuss the effect of appellant's judgments against the Mill Work & Mantel Company, Limited, or the attachments in execution issued thereon. The judgments were obtained against a copartnership, limited, which to their knowledge never had a legal existence, and the attachment in execution served upon the assignee of the general partnership as garnishee, could not become a lien upon or be entitled to take any of the moneys in his hands.

It is said by the appellant's counsel in their paper-book under the second subdivision of their printed argument: " That the assignment of the Mill Work & Mantel Company, Limited, which company in any view of the case was acting as a de facto, and we contend as a de jure, partnership association, limited, purporting on its face to be the assignment of a partnership association limited, the appellants, as creditors thereof, were within its express terms as cestuis que trust, and it was not

competent, either for the other creditors claiming under the
same trust, or for the auditor distributing the funds of the
trust, to attack or question the express terms of the trust by
virtue of which only could any of the creditors claim a part in
the distribution."

A complete answer to this proposition is found in the lan-
guage of Mr. Justice TRUNKEY in Eliot v. Himrod, supra,
where it is said: "The defendants contend the rule applicable
to corporations should be·applied in this case, namely, that in a
suit brought upon an evidence of debt, either by or against a
corporation de facto, the corporate existence and ability to con-
tract cannot be questioned. When a charter of incorporation
has been actually granted and certain persons are in possession
and enjoyment of the rights thereby conferred, though the
charter might be declared void by the court in a proper pro-
ceeding, its validity cannot be determined in a collateral suit:
Sphar v. Farmers' Bank, 94 Pa. 429. The formation of a
limited partnership association is materially different from the
creation of a corporation. Such association is treated in the
statute as a partnership which, upon the performance of cer-
tain acts, shall possess specified rights and immunities. In con-
templation that the association may consist of many members,
for convenience it is clothed with many of the features and
powers of a corporation, such as the right to sue and be sued,
grant and receive, in the association name. But no man can
purchase the interest of a member and participate in the subse-
quent business, unless by a vote of a majority of the members
in number and value of their interests. No charter is granted
to the persons who record their statement. When they are sued
for debt and claim immunity founded on such statement, it is
competent for the plaintiff either to point to a fatal defect on
its face, or to prove that an essential requisite, though formally
stated, is falsely stated."

No part of the fund for distribution could be successfully
claimed by the appellants except on the theory that before the
assignment the property from which the fund was derived was
that of a legally organized copartnership association, limited.
In this contest the creditors have the same right to show want
of compliance with the terms of the statute as though they were
proceeding by action against the members as general partners.

The appellants had the right to show compliance with the terms of the statute in the organization and management of the copartnership association, limited, in support of their claims. The parties were all heard before the auditor, and upon satisfactory evidence he has found that appellants did not comply with the statute and are therefore general partners, and the exceptions to his report were overruled by the court below and his report absolutely confirmed.

We have said that the written assignment executed by two of the members of the general partnership in the absence of positive dissent on the part of any of the other partners, was sufficient to vest the title to the partnership property in the assignee. The auditor has found that there was no such dissent. In Hodenpuhl v. Hines, supra, in his conclusions of law it was said by ARCHBALD, P. J., " (8) As a general rule one member of a general partnership cannot make an assignment for the benefit of creditors without the authority or consent of the other members of the firm ; but if such an assignment be made by one partner it will be good as against subsequent execution creditors of the firm, unless the other partner or partners dissent therefrom."

" (10) The question in this issue is one of title, and the assignment by Mr. DeGontard to the plaintiffs was sufficient to transfer the title of the firm to the property in dispute, unless Dr. Reynolds, the other partner, positively dissented therefrom, which he is not shown to have done."

In a per curiam opinion affirming this case it was said " the learned judge of the court below, who sat without a jury in this case, has disposed of the questions of fact and of law with discrimination and ability. We affirm the judgment upon his opinion."

In Kramer's Appeal, No. 17, February term, 1897, in this court, it appears that Kramer purchased the interest of Jesse D. Snyder, an original member, and by virtue of an election by the board of managers on June 5, 1893, he became a member and a manager. This was in strict compliance with the 4th section of the act. The contention that this change of membership required an amended statement to be filed of record is without foundation ; the statute does not require it.

It further appears that about April 5, 1892, David M. Reeder

paid in $500 to the capital stock and was thereupon elected a new member.  This was an increase of the capital stock named in the original statement and should have been accomplished by an amendment which appears never to have been filed. Reeder subsequently sold his interest to Samuel H. Follmer, the appellant in No. 20, February term, 1897, in this court. The auditor does not find that Follmer was formally elected as a member, but finds that he was present at meetings of the association, participated therein and was recognized by the other members as a·member in the management and conduct of the business.   Recognizing the rule applied in Hill v. Stetler, supra, to a member of the Amity Coal Company, Limited, by purchase of shares subsequent to its organization, we must hold Kramer and Follmer general partners with the other appellants.

It appears from the auditor's report that at the time of the assignment there was due and owing to creditors of the copartnership, not including the claims of the appellants, the sum of $17,009.28.   Treating the appellants as general partners it needs no citation of authorities to establish the proposition that they were entitled to no part of the fund for distribution until all the claims against the general partnership were fully satisfied and paid, and as the general creditors received only 28.84 per cent from the fund for distribution, upon their respective claims, it is unnecessary to pursue the subject further.

The appellants entered into a business venture and sought immunity from liability by association as a copartnership association, limited, under the statute of Pennsylvania in such case made and provided.   They did not comply with its terms, and by virtue of such noncompliance they became general partners, and must be so regarded in the disposition of these appeals. To award any part of the fund for distribution to the appellants to the detriment of the just claims of their creditors would be a palpable disregard of the rules of justice and equity, to the protection of which the creditors are entitled.   The able report of the learned auditor and the decree of the court on the exceptions thereto properly disposed of all the questions at issue.

The specifications of error are all overruled.   The decree of the court below is affirmed and the appeal in this case dismissed at the cost of the appellant.