**Trumbower Company v.
Noe Construction Corporation**

*Preston Moritz*, for International Fidelity Insurance Company.

*Bernard M. Goodman*, for Clarke Investments, Inc.

GRIFO, J., December 12, 1973.—This case comes before us on the motion of defendant, International Fidelity Insurance Company (IFIC), for summary judgment against additional defendant, Clarke Investments, Inc. (Clarke).

Noe Construction Company (Noe) entered into a contract to build a swimming pool for the Borough of Nazareth, Pa. Noe filed a stipulation against liens to the Borough of Nazareth in Northampton County Courthouse on March 24, 1970. Between April 23, 1970, and May 1, 1970, the Trumbower Company (Trumbower) supplied certain building materials, worth $6,554.56, to Noe to be used for construction of the swimming pool. Noe had obtained a loan from Suburban Bank, arranged by and guaranteed by Clarke, with Noe executing to Clarke a written assignment

of its rights under the contract with the Borough of Nazareth. The Borough of Nazareth was notified of this assignment and paid the contract price, $19,357, to Clarke and Noe jointly, from whom it passed to Suburban Bank in partial satisfaction of the earlier loan.

IFIC provided a surety bond for Noe in its contract with the Borough of Nazareth. Under the bond, IFIC paid $6,000 to Trumbower in settlement of Trumbower's claim for $6,554.56 against Noe, and now IFIC, through subrogation, stands in Trumbower's shoes in this action to recover that $6,000 payment from additional defendant, Clarke.

There is no evidence of the solvency or insolvency of Noe.

The issue here is whether a contractor can assign the proceeds of a contract where a materialman is unpaid. IFIC suggests a negative answer on either of two theories:

1. The assignment of contract rights while a materialman is unpaid is prohibited by the Act of January 21, 1843, P. L. 367, sec. 1, 39 PS §161; or

2. Any voluntary conveyance of assets by a debtor is void as to creditors.

The Act of January 21, 1843, P. L. 367, sec. 1, provides:

"It shall not be lawful for any company . . . empowered to construct, make, *and manage* any . . . public internal improvement, while the debts . . . incurred by the said company to contractors . . . employed in the construction . . . of said improvement remain unpaid, to execute a general or partial assignment . . . so as to . . . delay their said creditors." (Italics supplied.)

Noe was not empowered to manage the swimming

pool for the Borough of Nazareth, so this statute does not void the assignment.[1]

The latter theory is based on IFIC's reading of Fidelity Trust Co. v. Union National Bank of Pittsburgh et al.[2] That case involves two distinct avenues for challenging assignments. First, an assignment made by the insolvent debtor to prefer one creditor over others was held to inure to the benefit of all the creditors under the Act of April 17, 1843, P. L. 273, sec. 1, 39 PS §163; 313 Pa. at 484. That statute deals with the assignment of property in trust made by debtors to trustees. Here, there is neither trust nor trustee. Further, that statute doesn't invalidate the assignment, but only allows other creditors to share in an assignment to one of their number:[3] Hodenpuhl v. Hines, 160 Pa. 466, 28 Atl. 825 (1894).

Second, Fidelity Trust condemns a conveyance under sections 4, 5, 6, and 7 of the Uniform Fraudulent Conveyance Act,[4] 313 Pa. at 472. This statute places limitations on IFIC's theory that voluntary conveyances by debtors are void; such conveyances are valid if a fair consideration is paid (section 4, 39 PS §354; section 6, 39 PS §356), and if sufficient capital is retained by the grantor (section 5, 39 PS §355), and if there is no intent to defraud creditors: section 7, 39 PS §357. Here, a fair consideration was paid, for Noe received, in exchange for an assignment of $19,357, a cancellation of a prior debt in that amount and the extension of a new line of credit in the amount of $40,000. Satisfaction of an antecedent debt in an

---

[1] It is unnecessary to decide the effect on this statute of the Act of June 4, 1901, P. L. 404, sec. 42.

[2] 313 Pa. 467, 169 Atl. 209 (1934).

[3] It is unnecessary to decide the effect on the Act of April 17, 1843, P. L. 273, sec. 1, of the Act of June 4, 1901, P. L. 404, sec. 42.

[4] Act of May 21, 1921, P. L. 1045, no. 379, 39 PS §351, et seq.

amount equivalent to the amount assigned, without more, is fair consideration: Uniform Fraudulent Conveyance Act, section 3, 39 PS §353.[5] Here, there is no evidence that insufficient capital was retained by Noe. Finally, here, the only evidence of an actual intent to defraud is that the proceeds of a contract were assigned to one creditor, for fair consideration, while another creditor was unpaid. Clarke denies any knowledge of the existence of other unpaid creditors. A stipulation against liens had been filed by Noe. So there is inadequate evidence of an actual intent to defraud.

Since IFIC has advanced no other theory of recovery, we hold that the assignment of contract rights by Noe to Clarke was valid, and we, therefore, enter the following

### ORDER OF COURT

And now, to wit, December 12, 1973, defendant, International Fidelity Insurance Company's motion for summary judgment is denied and dismissed.

---

[5] The presence of fair consideration relieved Clarke, the grantee of the assignment, of the burden of proving Noe's solvency at the time of the conveyance and immediately thereafter: First National Bank of Marietta v. Hoffines, 429 Pa. 109, 239 A. 2d 458 (1968).