146　　290
24 SC 641

## BRIAR HILL C. & I. CO. v. ATLAS WORKS, LIM.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 26, 1891—Decided January 4, 1892.

1. The mortgage of a limited partnership, organized in apparent compliance with the provisions of the act of June 2, 1874, P. L. 271, and its supplements, is a valid lien on the partnership property mortgaged,*

---

* The mortgage in this case was upon a leasehold. The question whether, on March 24, 1883, the association had power to make such a mortgage, discussed for the appellant in the argument in the Supreme Court, was not considered in the report of the auditor, in the court below.

Auditor's Report.

notwithstanding defects in the recorded statement, and a neglect of statutory requirements in the management of the association.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 18 October Term 1890, Sup. Ct.; court below, No. 159 September Term 1886, E. D., C. P. No. 1.

On September 9, 1886, by virtue of certain writs of fieri facias, among others No. 159 September Term 1886, E. D., sur judgment for $6,308.53, entered on August 13, 1886, in favor of the Briar Hill Coal & Iron Company against the Atlas Works, Limited, and No. 77 October Term 1886, E. D., upon a judgment for $26,000, entered on March 24, 1883, in favor of the Peoples' Savings Bank, for use of Andrew Carnegie, the leasehold, machinery and fixtures of the Atlas Works, Limited, were sold to Andrew Carnegie for the sum of $27,000, and on September 12, 1887, various other proceedings having been had in the meantime, *Mr. W. K. Jennings* was appointed auditor to make distribution of the proceeds.

On July 25, 1889, the auditor filed his report, wherein it was found, inter alia, that on March 24, 1883, the Atlas Works, Limited, a partnership organized under the act of June 2, 1874, P. L. 271, for the purpose of carrying on a general foundry and machine business, by E. R. Hugus and R. H. Negley, its chairman and secretary, respectively, executed and delivered a bond for twenty-six thousand dollars, real debt, to the Peoples' Savings Bank, secured by a mortgage on its leasehold and fixtures guaranteed by Andrew Carnegie by indorsement thereon; that, on the same day, judgment was entered on the bond, the mortgage being recorded afterward, on December 14, 1883; that, default having been made, Mr. Carnegie paid the debt secured, principal and interest, and on June 23, 1886, took an assignment of the securities to himself; that on August 13, 1886, the Briar Hill C. & I. Co., having that day obtained its judgment against the Atlas Works, Limited, issued the execution to No. 159 September Term 1886, E. D., and levied upon the leasehold and fixtures of the execution defendant; and that on August 26, 1886, Mr. Carnegie issued the execution to No. 77 October Term 1886, E. D. After finding certain other facts

Auditor's Report.

indicating a defective organization of the Atlas Works, as a limited partnership, and irregularities in its method of management, the auditor's report proceeded :

There is only one question of importance at issue in this cause, and that is a question of law. The controversy is between the Briar Hill C. & I. Co. and Mr. Andrew Carnegie. The fund for distribution arises from the sale of the leasehold of the Atlas Works, Limited, upon sundry executions ; two of which, to wit, Nos. 51 September Term 1886, and 77 October Term 1886, were in favor of Andrew Carnegie. The fieri facias at No. 77 October Term 1886, was issued upon a judgment in favor of the Peoples Savings Bank, for use of Andrew Carnegie, v. the Atlas Works, Limited, upon the bond accompanying the mortgage made by the Atlas Works, Limited, to the Peoples Savings Bank, the payment of which was guaranteed by Andrew Carnegie. Said bond was assigned to Mr. Andrew Carnegie on the twenty-third of June, 1886 ; and it is conceded that the judgment on said bond related back to the date of the recording of said mortgage, to wit, the fourteenth day of December, 1883, and was therefore the first lien, and Mr. Carnegie would be entitled to the whole of the fund, after the payment of costs and taxes.

But it was claimed by Mr. Houseman, attorney for the Briar Hill C. & I. Co., that the said mortgage was invalid for reasons hereinafter stated, which would entitle his clients to receive the amount of their claim. It is apparent, therefore, that if the mortgage above mentioned was a valid lien, that would be the end of this case. Mr. Houseman's reasons for contesting the validity of the lien of said mortgage, specifically stated, are as follows :

1. That the organization of the limited-partnership association called the Atlas Works, Limited, was entirely defective.

2. That the subsequent conduct of the managers in neglecting to hold regular meetings; in omitting to re-elect officers ; in not filling the places of the two members of the firm, Rufus C. Crocker and George M. Miller, who had died prior to the execution of the mortgage referred to ; in neglecting to keep full and perfect minutes of the proceedings of the board of managers; in acting without the sanction of regular meetings of the association, etc., renders the action of the alleged board

Auditor's Report.

of managers in executing said bond and mortgage absolutely void as to other creditors.

3. That, by reason of the informalities above mentioned, the said association had ceased to exist as a limited-partnership association under the law, and that in March, 1883, E. R. Hugus and R. H. Negley were not lawfully the chairman and secretary of the said association, with power to sign and execute the said bond and mortgage.

In support of his position, Mr. Houseman cites Eliot v. Himrod, 108 Pa. 569, and quotes the following language from the opinion of the court: " General partners, by recording a statement in due form, false with respect to subscription and payment of capital, are not within the statute, which, on certain terms abrogates the common-law rule, that he who contracts to contribute capital and share in the profits of a firm, shall be liable for its debts. Each partner is liable, unless saved by the statute. If the partners have not complied with the statutory requisites, a limited-partnership association has not been formed. Where there is no record of a proper statement, there is no statutory association."

This language is very strong; and if this were a proceeding to charge the individual members of the Atlas Works, Limited, with the debts of the firm, the defects in organization and the irregularities in the subsequent management of the business of the firm, are so apparent that the auditor does not see how he could avoid the conclusion that the members of said association were not within the protection of the statute. But, to hold that on account of these irregularities and defects, there was actually no association under the law capable of performing any acts which would be binding upon it, is another and very different question.

A partnership association organized pursuant to the provisions of the act of June 2, 1874, and its supplements, is not, in the judgment of the auditor, a mere common-law partnership, plus the attribute of a limited liability on the part of its members; but it is a creation of the legislature, is sui generis, and, though analogous both to a partnership at common law and a corporation, in many respects, yet it differs from each in that it possesses some of the characteristics of both. It is a quasi corporation. It has special restrictions and privileges. It ex-

ists only from the recording of its articles. It may adopt a common seal, and certain formalities are requisite to the validity of its acts. Only certain officers have the power to act to bind it, and in certain cases they must act together. When they have made an apparent compliance with the requirements of the act, by filing their articles of association, schedules, etc., they become a partnership limited de facto, endued with all the powers of such associations, restricted in their mode of action according to the requirements of the act, and bound by the acts of their agents when performed in a manner conforming to the requirements of the statute.

A defect in the original organization, or a subsequent neglect of the requirements of the statute in the management of the business of the association, would not, in the judgment of the auditor, constitute a good defence in an action by a creditor of the association upon a contract made by the association (except that in certain cases contracts must be signed by at least two of the managers), when set up by the association itself; and the auditor is unable to perceive in what respect another creditor of the association would be in any better position to set up such a plea than the association itself, especially if he had, as in this instance, done business with the association as a limited-partnership association. The statutory remedy is not to relieve the association itself, but to hold the individual members thereof liable, on the ground that they have not brought themselves within the protection of the statute.

This seems to be the effect of the decision in Eliot v. Himrod, supra. It is true that the opinion states that "if the partners have not complied with the statutory requisites, a limited partnership has not been formed; where there is no record of a proper statement, there is no statutory association;" but we must take into account what was the question before the court. It was solely as to the liability of the individual members of the association; and we must presume, unless we go much further than the court has gone, that what was meant was that, so far as any protection to the members of the association was concerned, "a limited partnership had not been formed," and that there was "no statutory association." To hold that a failure to comply with the statutory requisites re-

sulted in the formation of a mere common-law partnership, and wrested from the association its power to bind itself by the methods pointed out by the statute, would be productive of the grossest injustice and fraud. No deed, bond, mortgage, note, or other paper, executed under the formalities of the statute, would be binding, if the association should subsequently be declared to have been informally organized. It is certainly much more reasonable to say that when a partnership association is organized under the act, all its engagements entered into under the forms prescribed by law are valid and binding, and the defective formation has no effect upon the obligation, but only on the kind of liability which shall arise under it. As has already been intimated, such associations cannot take advantage of their own wrong and plead lack of power to enter into the obligation; nor can a creditor who had dealt with the firm as a partnership, limited, contest its existence in order to defeat the claim of an adverse claimant.

Whether this association has complied with the provisions of the act sufficiently to limit the liability of the members, is immaterial for the purposes of this case. By the filing and recording of the articles of association and schedules, they became prima facie and de facto a partnership limited, under the act, with power to bind themselves by the forms prescribed by the same. Therefore, it follows that if this bond was executed by the proper officers and with the legal formalities, its lien must prevail over all subsequent encumbrances. . . . .

—Finding that the bond and mortgage were executed in pursuance of a resolution of the board of managers regularly called for the express purpose, the whole board being present, that it was signed by the chairman and secretary and attested by the common seal of the association, and that the execution, though in certain respects informal, was in sufficient compliance with the act to bind the association, the auditor reported a distribution, first to costs, taxes, and auditor's fee, and thereafter $23,783.10 to fieri facias No. 77 October Term 1886, Peoples' Savings Bank for use of Andrew Carnegie.

To said report, the Briar Hill C. & I. Co. filed exceptions alleging that the auditor erred:

1. In distributing the sum of $23,783.10 to judgment [exe-

cution] at No. 77 October Term 1886, Peoples' Savings Bank, for use of Andrew Carnegie, v. Atlas Works, Limited.[1]

2. In holding that the lien of the judgment [execution] at No. 77 October Term 1886, related back to the date of the mortgage of the Atlas Works, Limited, to the Peoples' Savings Bank, said mortgage not being a lien.[2]

3. In holding that the mortgage of the Atlas Works, Limited, to the Peoples' Savings Bank, was a valid lien on the leasehold, machinery, tools, fixtures of the Atlas Works, Limited.[3]

6. In not holding that the lien of the mortgage of Atlas Works, Limited, to the Peoples' Savings Bank, was divested by a judicial sale upon a prior encumbrance in July, 1886.[4]

7. In not awarding so much of the fund for distribution as would be necessary, to the debt, interest and cost on the judgment [execution] of Briar Hill C. & I. Co. v. Atlas Works, Limited, No. 159 September Term 1886.[5]

—After argument, the court entered a decree, without opinion filed, dismissing said exceptions, confirming the report of the auditor, and ordering distribution accordingly. Thereupon, the exceptant took this appeal, specifying that the court erred in dismissing the several exceptions filed.[1 to 5]

*Mr. Geo. P. Hamilton* (with him *Mr. M. H. Houseman*), for the appellant.

That a leasehold is a chattel interest, and the mortgage involved in this case was unauthorized and created no lien, counsel cited: § 8, act of April 27, 1855, P. L. 369; act of January 11, 1867, P. L. 1372; act of June 2, 1874, P. L. 271; § 1, act of February 18, 1875, P. L. 3; act of May 1, 1876, P. L. 89; Esterly's App., 54 Pa. 192; Roberts' App., 60 Pa. 400·; Schenley's App., 70 Pa. 98; Schmidt v. Armstrong, 72 Pa. 355; Fox's App., 112 Pa. 337. That, where there has not been a compliance with statutory requisites, a limited partnership has not been formed: Eliot v. Himrod, 108 Pa. 569; Sheble v. Strong, 128 Pa. 315.

*Mr. John G. MacConnell*, for the appellee.

PER CURIAM:

A careful examination of this case fails to disclose error.

We think the auditor and the court below were right in their conclusions.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.