# Abington Dairy Company, Appellant, *v.* Reynolds.

*Limited partnership association—Partnership—Declarations.*

In an action by a limited partnership association under the Act of June 2, 1874, P. L. 271, a letter written under the letterhead of the company, and signed by a person who was not shown to have been a manager of the company, is inadmissible for the purpose of proving that the goods were sold and delivered not to the defendant, but to the defendant's brother.

The use of the abbreviation "Ltd." instead of "Limited" after the company's name on the letterhead, will not make the person who signed the letter a general partner so that his declarations and acts will have the same force and effect in all cases as the acts and declarations of a copartner in an ordinary partnership. The omission to use the word limited merely imposes liability for indebtedness on members who participate in the omission, or knowingly acquiesce therein.

The use of the abbreviation "Ltd." instead of the full word "Limited," is not such a failure to comply with the law as will bring the association under the penalty in the proviso to the third section of the Act of June 2, 1874, P. L. 271.

The declarations of a single manager of a limited partnership association will not bind the association, unless such declarations are made by him as a special agent of the association.

*Appeals—Harmless error—Review.*

The appellate court will not reverse a judgment because the trial judge did not quite accurately quote some of the evidence, where the variation is so

slight as to do the plaintiff no harm; and this is especially so where the trial judge does not attempt to control the jury in their recollection of what was said.

Argued Jan. 20, 1904. Appeal, No. 79, Jan. T., 1904, by plaintiff, from judgment of C. P. Lackawanna Co., Sept. T., 1902, No. 1376, on verdict for defendant in case of Abington Dairy Company v. T. H. Reynolds. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for goods sold and delivered.

The facts are stated in the opinion of the Superior Court.

When the defendant, Thomas H. Reynolds, was on the stand, the following offer was made :

The counsel for the defendant offer in evidence letter from G. M. Carpenter, marked Defendant's Exhibit No. 10.

The Court: Is it conceded by the plaintiff that Mr. Carpenter was a director of the dairy company in the year 1901 ?

Mr. Vosburg: Yes, sir.

The Court: Is it conceded that this is the same Carpenter and the same man who signed one of the receipts in evidence in this case ?

Mr. Dawson: Yes, sir.

The Court: Conceded that he received that money and receipted for it on behalf of the company?

Mr. Vosburg : Yes, sir.

The Court: It is also conceded that this paper is what it purports to be, namely, a letter sent by Carpenter to Reynolds, the defendant.

Mr. Dawson: We don't know as to that.

The Court : Is it conceded that that is Mr. Carpenter's writing ?

Mr. Vosburg : Yes, sir.

Mr. Chase : Q. Where did you receive this paper, where did you get that paper ? A. I got it by mail at Factoryville. Q. Are you acquainted with the writing of Mr. Carpenter? A. Yes, sir.

The Court : For what purpose is the letter offered ?

Mr. Chase : It is offered in evidence for the purpose of showing that this indebtedness in question in this case was the indebt-

edness of W. G. Reynolds and not the indebtedness of Thomas H., and Thomas H. Reynolds was not liable for it as tending to show those facts.

Mr. Vosburg : The counsel for the plaintiff object to the offer as incompetent, immaterial and irrelevant.

The Court: The objection is overruled and the letter admitted in evidence as a circumstance bearing upon the question as to whom the credit in this case was given, and also bearing upon the nature of the defendant's undertaking, if any. Exception noted for the plaintiff at whose request a bill is sealed. [1]

Letter is as follows :

"SCRANTON, PA., NOV. 18, 1901.
"THOMAS REYNOLDS Esq.:

"Dear Sir :—I wish you would drop in and see Fred about your brother's bill. Can't we get him to pay so much each month on this bill ? Come in at any rate and let's see what can be done.

"Yours truly,
"GEO. M. CARPENTER."

The court charged in part as follows :

[Your attention is further called to the nature of a letter which the defendant received from one of the directors of this company in the month of November, 1901, after the deliveries of milk had ceased. While that letter is by no means conclusive and perhaps is not entitled to any great deal of weight, yet I think it is fair matter for the jury to consider in a case of this kind and thinking so I have admitted it in evidence. It has been stated in your hearing and the record shows that while this concern was at the time what is called a limited partnership—at the time that this transaction began—it was sometime afterwards converted into a corporation, and a man by the name of G. M. Carpenter was connected with and interested in both concerns, and I think he has been spoken of as a director, a director at the time this letter was written; and without undertaking to repeat the contents of the letter, in substance it calls the defendant's attention to the fact that his brother's account is behind, or something of the kind ; calls attention not to his account, but to his brother's account, and

asks him if he can't get him to do something, make a part payment, pay so much a month, or something of the kind. You have right to consider that for what it is worth in view of the fact that Mr. Carpenter is confessedly, or was, a director. The answer to that is, that there is nothing here to show that Mr. Carpenter was conversant with the real history of this matter. It is for you to say how much weight that answer is entitled to. Of course concerns of this kind can only act by their boards of directors. Oftentimes the management of their business is so far committed to a manager or superintendent that with regard to much of it a director perhaps would speak with very little intelligence; but the letter I think is legitimate for you to consider for what it is worth.] [2]

[I think the allegation is made here that the books bear evidence of the account having been first charged to W. G., and that upon the face of the books themselves there is evidence that the name of T. H., that is the defendant, was added afterwards. My impression is that the bookkeeper testified that in the first instance she did so start the account, and that she added T. H.'s name later on when her mistake, as she called it, was discovered by the manager. You have a right to examine the books, to look at them, such of them as have been put in evidence, and to judge whether there is anything in that argument and if so how far it is sustained, and what effect shall be given to it.] [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2, 3) above instructions, quoting them.

*A. A. Vosburg,* with him *Chas. W. Dawson,* for appellant.— Unless the individual members or directors of a corporation are authorized so to do, they cannot bind it by any express promise, nor can corporate engagements be implied from their unauthorized and unsanctioned acts or declarations : Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Cope v. Railway Co., 3 Exch. 841; Homersham v. Waterworks Co., 6 Exch. 137; D'Arcy v. Railway Co., L. R. 2 Exch. 158; Turnpike Road, 5 Binn. 481; Comrs. v. Lecky, 6 S. & R. 166.

We believe it to be well settled that limited partnerships

organized under the provisions of the act of 1871 are quasi corporations, and that the managers of such partnership are identical with the directors of a corporation : Patterson v. Tidewater Pipe Co., 12 W. N. C. 452; Oak Ridge Coal Co. v. Rogers, 108 Pa. 147 ; Briar Hill Coal & Iron Co. v. Atlas Works, 146 Pa. 290; Straw v. Murray, 182 Pa. 642; Mercantile Nat. Bank v. Lauth, 143 Pa. 53 ; MacGeorge v. Chemical Mfg. Co., 141 Pa. 575 ; Pittsburg Melting Co. v. Reese, 118 Pa. 355.

The learned court misquoted the evidence in the charge to the jury and they may have been misled thereby : Phila. & R. R. Co. v. Alvord, 128 Pa. 42; Greber v. Kleckner, 2 Pa. 289 ; Musselman v. East Brandywine,- etc., R. R. Co., 2 W. N. C. 105 ; Peirson v. Duncan, 162 Pa. 187 ; Com. v. Swayne, 1 Pa. Superior Ct. 547 ; Reichenbach v. Ruddach, 127 Pa. 564.

*A. A. Chase*, for appellee.

OPINION BY MORRISON, J., March 14, 1904 :

This was an action commenced before a justice of the peace against W. G. Reynolds and T. H. Reynolds, for the price and value of goods sold and delivered. The justice entered judgment against the defendants and they appealed to the court of common pleas. On March 20, 1903, a jury was called and sworn, and on motion of plaintiff's attorney the name of W. G. Reynolds was stricken from the record. On March 21, 1903, the jury returned a verdict in favor of the defendant and judgment being entered thereon plaintiff appealed.

The case was tried on the theory that while the goods were sold and delivered, the plaintiff, the Abington Dairy Company, was a limited partnership under the Act of June 2, 1874, P. L. 271 ; that after the cause of action had arisen the said plaintiff became incorporated under the same name and became the assignee of all the goods, property, rights, etc., of the limited partnership, which had been doing business theretofore as the Abington Dairy Company. It appears to have been conceded that at the time of the trial the plaintiff was an incorporated company. The paper-book of the appellant exhibits a remarkable carelessness in the preparation and trial of the case. No pleadings are printed, not even the transcript from the justice.

We do not find a scintilla of written evidence tending to show the organization of the limited partnership nor the later incorporation of the company. The only evidence we find in the record that the plaintiff company was at one time a limited partnership under the act of 1874 is the following: "Q. Mr. Stone, at the time of this account this concern was run as the Abington Dairy Company, Limited, and subsequently the company was incorporated? A. Yes, sir. Q. And was this account assigned to the corporation before this suit was brought? A. Everything was assigned to the Abington Dairy Company. Q. Was this account assigned? A. It was assigned with everything else." This is the sum and substance of the testimony establishing the important fact that the plaintiff was a limited partnership. In addition to this there is some oral testimony that G. M. Carpenter was a director of the company, and as we understand the testimony, it was proved and conceded that he was a director of the incorporation, which succeeded the limited partnership. The first and second assignments of error at once develop the importance of the question of whether or not the plaintiff was a limited partnership at the time the account accrued, and at the time the letter was written which gives rise to these assignments of error. This letter is as follows:

"ABINGTON DAIRY COMPANY, LTD.
"SCRANTON, PA., Nov. 18th, 1901.
" THOS. REYNOLDS, ESQ.

" Dear Sir:—I wish you would drop in and see Fred about your brother's bill. Can't we get him to pay so much each month on this bill? Come in at any rate and let's see what can be done.

"Yours truly,
"GEO. M. CARPENTER."

The counsel for the defendant stated in offering this letter as follows: " It is offered in evidence for the purpose of showing that this indebtedness in question in this case was the indebtedness of W. G. Reynolds, and that Thos. H. Reynolds was not liable for it, as tending to show these facts." This offer was objected to and the court overruled the objection, admitted the letter and sealed a bill for the plaintiff.

The goods for which the plaintiff claims were admittedly delivered to W. G. Reynolds, but the theory of the plaintiff was that they were sold and delivered on the credit of Thos. H. Reynolds; that Thos. H. Reynolds came to the plaintiff's place of business and undertook and agreed to pay for the milk if the plaintiff would deliver it to his brother, W. G. Reynolds. At the trial Thos. H. Reynolds was denying any such undertaking and denying his liability to the plaintiff for the milk in question. Therefore, the pinch of the case was whether the milk was sold and delivered on the credit of Thos. H. Reynolds or on the credit of W. G. Reynolds. The above letter was probably quite persuasive evidence to the jury that the debtor was W. G. Reynolds and not Thos. H. Reynolds. Therefore, the authority of George M. Carpenter to write this letter was of vital importance in the case. There is not a scintilla of evidence that he was a manager of the limited partnership organization above referred to. There is some evidence that he was a director of the company, but manifestly this refers to the corporation created to which the limited partnership transferred all of its assets, etc. In order to make this letter evidence for the purpose for which it was offered, we think it was necessary for the defendant to show that Geo. M. Carpenter was a manager of the limited partnership, and there is no evidence from which such fact could be found.

It having been proved by parol without objection and without exception that the plaintiff was a limited partnership, organized under the act of 1874, and that the milk in question was sold and delivered by such partnership, we are disposed to presume that it was organized in accordance with the act of assembly of June 2, 1874, and that everything was done which was requisite to give the authority to transact business in accordance with that act and its supplements. The act of 1874 in its 5th section provides for a board of managers, and no debt shall be contracted or liability incurred for such association except by one or more of the said managers. We think it follows that before the defendant was entitled to put the letter written by George M. Carpenter in evidence for the purpose of showing that the liability for the goods was that of W. G. Reynolds and not Thos. H., the burden rested on him to show that George M. Carpenter was a duly authorized manager of

said company. This he did not do, and, therefore, the court erred in admitting said letter.

This conclusion is based on the theory that both plaintiff and defendant had practically consented to the parol proof that the plaintiff was a limited partnership. And this having been conceded, we think upon a question like the one under consideration it ought to be presumed that the partnership association was not in default in anything required to be done by the act of 1874, and its supplements. If this were a suit against the individual members of an alleged limited partnership which had not complied with the provisions of the statute, the rule would be different. In that case, on the question of personal liability of the members as general partners for debts contracted, the burden would rest on the defendants to show that they had complied with the provisions of the act of 1874 and its supplements: Eliot v. Himrod et al., 108 Pa. 569; Vanhorn et al. v. Corcoran et al., 127 Pa 255.

But the questions raised in those cases and the one under consideration are different. Ours is not a case where suit is brought against members of a limited copartnership for the purpose of holding them individually liable, but it is a case where the defendant seeks by the declaration of a member of such partnership to deprive it of the right to recover on an alleged contract for goods sold and delivered. In this case we have already said that we think before this letter could go in evidence the burden rested on the defendant to show that it was written by one having authority.

The counsel for the defendant argues with much earnestness that the plaintiff limited partnership did not comply with the act of 1874, in that it did not make the word " limited " the last word of its name. It is conceded that the abbreviation " Ltd." instead of the full word " limited " was used. The argument is made from this that the company failed to comply with the law, and therefore the members became ordinary copartners, and that George M. Carpenter, as a member of the association, had authority to write the letter and bind the company on the theory that every member of a copartnership is the agent of all the other members of the copartnership while acting within the scope of the business in which it is engaged. It should be noted that this is the only failure to comply with the

act of 1874 and its supplements charged against the plaintiff. We are not disposed to concede that the use of the abbreviation " Ltd." instead of the full word " Limited " was such a failure to comply with the law as would bring this association under the penalty in the proviso to the third section of the act of 1874. We think the use of the abbreviation " Ltd." was a substantial compliance with the act and that it could not mislead anybody. It may be conceded that it was a stupid performance to resort to such an abbreviation where the act directed that the word " Limited " should be used, and it is difficult to understand why it was done, but we think all persons of ordinary intelligence would readily understand when they saw the name " Abington Dairy Company, Ltd." what it meant. But if it be conceded that the use of this abbreviation has the effect of rendering the members of the company liable to the penalty provided in section 3 of the act of 1874, the conclusion of the defendant's counsel is not warranted. This proviso reads : ' Provided, that the omission of the word ' Limited ' in the use of the name of the partnership association shall render each and every person participant in such omission or knowingly acquiescent therein, liable for any indebtedness, damage, or liability arising therefrom." This provision does not render each and all of the members liable as general copartners so that their declarations and acts would have the same force and effect in all cases as the acts and declarations of copartners in an ordinary partnership. It is in the nature of a penalty imposed upon the members for failing to comply with the requirements of the act in the use of the word " limited," and it simply makes every person participant in such omission liable for any indebtedness, damage or liability arising therefrom. Now the defendant in offering the letter in question in evidence did not bring himself within the provisions above quoted. The burden rested upon him to affirmatively show the authority of George M. Carpenter to write said letter because its manifest effect was to materially weaken the plaintiff's case against Thos. H. Reynolds, the defendant. As the case stood upon the evidence the letter was not competent and the court erred in its admission. It follows as a matter of course that the court also erred in its charge in regard to the letter which is complained of in the second assignment of error.

The counsel for the defendant seeing the difficulty in sustaining the court in admitting the letter argues that it does not bear any construction that would injure the plaintiff's case against Thomas H. Reynolds.   This argument is quite remarkable in view of the language used as to the purpose of offering the letter in evidence.   This language which has been quoted above shows that at the time the learned counsel fully understood the importance of the letter.   In our opinion it was very strong evidence tending to persuade the jury that the plaintiff's account was not against Thomas H. Reynolds.

" The acts or declarations of a director in a corporation will not bind or in any manner affect it unless they are shown to be within the scope of his ordinary powers, or of some special agency. . . . As we had occasion to say in a recent case corporate rights are not to be frittered away by loose and unauthorized declarations made by persons who at the time had no authority to bind the corporation ; and this principle applies as well to individual directors and employees of a corporation as to strangers."   Allegheny County Work-house v. Moore, 95 Pa. 408.   In Moshannon Land and Lumber Co. v. Sloan et al., 109 Pa. 532, Mr. Justice PAXSON said : " That the secretary had authority to renew the note may be conceded.   This, however, did not imply or involve the right to release a debtor of the corporation from a previous liability.   Such power must be expressly given or it must be implied from a course of dealing known to and sanctioned by the corporation."

" The board of directors, acting as a board, may bind the company by admissions and declarations, but a single director cannot do so except as a special agent of the company.   Neither can the admissions nor the declarations of the president bind the company unless he has extra powers given him, nor ordinarily those of the secretary or treasurer :"   2 Cook and Corp. section 726.

It seems to be quite well settled that limited partnerships organized under the act of 1874, are quasi corporations, and that the managers of such partnerships are similar in their authority to the directors of a corporation :   Oak Ridge Coal Co. v. Rogers, 108 Pa. 147.   See also Briar Hill Coal and Iron Co. v. Atlas Works, Lim., 146 Pa. 290.

Assuming the plaintiff to have been a limited partnership

organized under the act of 1874, it was manifest error to admit the George M. Carpenter letter upon the facts as they appeared at the trial, and therefore, the first and second assignments of error must be sustained.

We are not inclined to sustain the third assignment. Possibly the learned judge did not quite accurately quote the evidence referred to, but the variation is so slight that we hardly think it did the plaintiff any harm. Morever, the learned judge did not attempt to control the jury in their recollection of what the bookkeeper did say in regard to the account. But on the contrary he gave his understanding of it and said to the jury, "You have a right to examine the books, to look at them, such of them as have been put in evidence, and to judge whether there is anything in that argument, and if so how far it is sustained, and what effect shall be given to it." This instruction left it entirely to the jury to recall and determine what the witness did testify to in regard to the account. The third assignment is not sustained.

On the first and second assignments the judgment is reversed and a venire facias de novo awarded.